**Harold B. FINK, President Judge, Fifty-Fifth Judicial District, Potter County; and People for Justice, Plaintiffs,**

v.

**SUPREME COURT OF PENNSYLVANIA, Robert N.C. Nix, Jr., Chief Justice of Pa., Judicial Inquiry and Review Board of the Supreme Court of Pa., Honorable James E. Rowley, Chairman of the Judicial Inquiry and Review Board; Robert Keuch, Executive Director of Judicial Inquiry and Review Board; Robert L. Potter, Esquire, Special Prosecutor of the Pennsylvania Judicial Inquiry and Review Board, Defendants.**

**Civ. No. 86–1405.**

United States District Court, M.D. Pennsylvania.

Feb. 18, 1987.

See also 651 F.Supp. 238.

Clifford A. Rieders, Rieders, Travis, Mussina, Humphrey and Harris, Williamsport, Pa., for plaintiffs.

Arlin M. Adams, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants Supreme Court of Pennsylvania and Robert N.C. Nix, Jr., Chief Justice.

Howland W. Abramson, David R. Weyl, Philadelphia, Pa., for all other defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

On October 7, 1986, the Honorable Harold B. Fink and the People for Justice filed

a complaint and a motion for a temporary restraining order. Judge Fink and the People for Justice requested that we immediately restore Judge Fink to his full duties as President Judge of the Fifty-Fifth Judicial District, Potter County, Pennsylvania and enjoin all proceedings of the Judicial Inquiry and Review Board of the Supreme Court of Pennsylvania (the Board). We denied the Plaintiffs' request for a temporary restraining order. On February 10, 1987, we held a hearing on the Plaintiffs' application for a preliminary injunction immediately restoring Judge Fink to his full adjudicative duties. The Court's findings of fact, discussion of the motion for a preliminary injunction, and conclusions of law follow.

## II. Findings of Fact.

1. Plaintiff Harold B. Fink is President Judge of the Court of Common Pleas for the Fifty-Fifth Judicial District, Potter County, Pennsylvania.

2. An investigation with respect to Judge Fink began in 1984 when the Board received complaints regarding Judge Fink's conduct.

3. The Pennsylvania Constitution of 1968 prescribes a procedure for the investigation and discipline of judges.

4. The procedure for discipline of a judge begins with complaints filed with and hearings held by the Board.

5. The Board is made up of voluntary appointees all of whom presently have full professional responsibilities aside from their duties as board members.

6. The Board does not sit continuously.

7. In October, 1985, the Board decided to convene a two board member preliminary investigation panel to conduct hearings with respect to complaints that had been filed against Judge Fink.

8. Several preliminary investigatory hearings were held.

9. The Board's counsel asked questions submitted by Judge Fink of witnesses during preliminary investigation hearings held on April 16 through 18, 1986.

10. Judge Fink introduced evidence into the record of the preliminary investigation hearings.

11. Judge Fink testified at the preliminary investigation hearings and was represented by counsel, D. Bruce Cahilly, Esq.

12. The preliminary investigation ended in April, 1986.

13. The transcript of the preliminary investigative hearings totals 533 pages of testimony of 15 to 18 witnesses and about 60 exhibits.

14. A meeting of the Board was held on May 27, 1986, in Philadelphia, Pennsylvania.

15. All Board members were present with the exception of Mr. Justice Kauffman who was ill.

16. Upon the record of the preliminary investigative hearings the Board voted to recommend to the Supreme Court of Pennsylvania that Judge Fink be restricted to non-adjudicative duties.

17. The minutes of the Board meeting of May 27, 1986, read in relevant part: "Mr. McDevitt was requested to ask Robert Potter, Esquire to prepare a draft of Notice of Hearing in the Fink matter. Judge Bonavitacola was asked to prepare a form of letter to be submitted to the Supreme Court recommending the assignment of a Judge to Potter County and to restrict Judge Fink to non-adjudicative duties until the Board completes its investigation."

18. A recommendation to suspend Judge Fink from adjudicatory function during the pendency of the formal hearings was made to the Supreme Court of Pennsylvania.

19. Judge Fink did not know that the Board had recommended to the Supreme Court of Pennsylvania that Judge Fink be deprived of adjudicative functions until his counsel received a copy of the minutes of the Board meeting of May 27, 1986, on January 29, 1987.

20. Formal charges were drafted and sent to Judge Fink.

21. After May 27, 1986, the Board attempted to schedule formal hearings in order to be able to make a final recommendation to the Supreme Court of Pennsylvania.

22. Judge Fink requested and obtained from the Board several continuances.

23. Judge Fink requested that the formal hearings be held in a continuous fashion.

24. On July 1, 1986, Judge Fink filed a request for an extension of time within which to file an answer to the formal charges.

25. On July 2, 1986, Judge Fink filed a motion that the formal hearings be held in Potter County.

26. The request filed July 1, 1986, was granted and a new deadline for the filing of an answer was set for July 14, 1986.

27. The motion to have the formal hearings held in Potter County was denied.

28. On July 8, 1986, Judge Fink filed preliminary objections to the formal charges.

29. On July 16, 1986, Judge Fink filed a motion with the Board to have the formal hearings held publicly.

30. The Board expended time in an attempt to resolve Judge Fink's requests and motions.

31. The Board denied Judge Fink's motion to have the formal hearings held in public.

32. The relevant order of the Supreme Court of Pennsylvania reads in its entirety: "AND, NOW, this 29th day of July, 1986, IT IS ORDERED that HAROLD B. FINK, President Judge, Fifty-Fifth Judicial District, Potter County, be and hereby is assigned to perform administrative and non-decisional judicial duties until further order of the Court. By the Court: Robert N.C. Nix, Jr., Chief Justice."

33. The order is a de facto suspension from performing judicial adjudicative duties.

34. The order of the Pennsylvania Supreme Court of July 29, 1986, was not preceded by notice to Judge Fink that he was subject to reassignment or suspension and there have not been any formal hearings, findings of fact, conclusions of law of record, or further orders in the Supreme Court of Pennsylvania with regard to the suspension of Judge Fink.

35. The Board's investigation and hearings were completed on February 9, 1987.

36. The Pennsylvania Constitution of 1968 permits the assignment of a Common Pleas Judge from one court to another.

37. The "assignment" of Judge Fink was not from one court to another but from acting as a full judicial officer to acting in only a minimal non-adjudicatory fashion.

38. Judge Fink is currently permitted to handle only a few ministerial functions.

39. The suspension of Judge Fink is of an indeterminate nature.

40. Judge Fink continues to be paid and receives continued benefits of his elective office.

41. Judge Fink continues to occupy chambers, retains a personal staff, and is entitled to perform all administrative and supervisory duties of the President Judge of the Fifty-Fifth Judicial District, Potter County, Pennsylvania, which are minimal.

42. Another judge has been assigned to Potter County to perform decisional duties.

43. Judge Fink was informed by Mr. Chief Justice Nix on July 30, 1986, that the order for reassignment was solely for the protection of Judge Fink.

44. Judge Fink requested that he be reassigned to another district.

45. Judge Fink has not been reassigned to another district.

46. Judge Fink's reputation has been damaged by the order of July 29, 1986, and the pendency of the proceedings before the Board.

47. In August of 1986, Judge Fink appealed the denial of his motion that the formal hearings be held in Potter County to the Supreme Court of Pennsylvania.

48. The Supreme Court of Pennsylvania dismissed the appeal.

49. During the months of July, August, and the first half of September, 1986, the Board was in a period of personnel changes and a move of the Board's offices from Philadelphia to Harrisburg.

50. On September 15, 1986, Judge Fink filed a motion in the Pennsylvania Supreme Court to reinstate his appeal from the denial of his motion to the Board to have the formal hearings held in Potter County.

51. On September 17, 1986, Judge Fink filed a motion with the Board objecting to the composition of the formal hearing committee.

52. On September 24, 1986, Judge Fink requested a pre-hearing conference in the Board proceedings.

53. On September 29, 1986, Judge Fink filed a motion with the Board to disqualify Robert L. Potter, Esq., as the prosecutor.

54. Judge Fink was offered the week of September 30, 1986, for a pre-hearing conference but his attorney declined to appear at that time.

55. The Board scheduled formal hearings for October 15, 16, and 17, 1986.

56. Judge Fink objected to the Board's scheduling of the formal hearings for October 15, 16, and 17, 1986, on the ground that the hearings should not contain recesses and requested a postponement.

57. The Board has refused to conduct one continuous hearing but has attempted to set at least two days of hearings consecutively when possible.

58. Judge Fink's request that the formal hearings be held on consecutive dates delayed the Board's proceedings.

59. Before the first session of the formal Board on October 15, 1986, Judge Fink moved for a continuance, moved to dismiss, moved for production of records, moved for reconsideration, and moved for recusal of the Board committee and the entire Board.

60. Discussion of these oral motions occupies 66 pages of the transcript.

61. Judge Fink's attorney had adequate notice of the hearing dates of the formal hearings scheduled for October 15, 16, and 17, 1986.

62. Judge Fink's motion for a continuance was denied by the Board and the hearings went forward.

63. On October 17, 1986, Judge Fink consented to a resumption of the formal hearings at some time prior to December 1, 1986.

64. On November 19, 1986, the second session of the formal hearings commenced and continued through November 21, 1986.

65. The Board offered to hold hearings on Saturday, November 22, 1986.

66. Judge Fink refused a formal hearing on Saturday, November 22, 1986.

67. On November 21, 1986, the Board proposed to resume the third session of the formal hearings on December 3 through 5, 1986.

68. Judge Fink's counsel objected to holding the formal hearings on those dates because he had a real estate closing in New York.

69. On December 3, 1986, the Board commenced the third session of the formal hearings which continued through December 5, 1986.

70. December 3, 1986 was consumed by more requests by Judge Fink.

71. The formal hearings recommenced on December 4, 1986.

72. On December 5, 1986, no hearings were held because the parties were discussing whether a settlement was possible and counsel for Judge Fink requested time to consider settlement.

73. On December 12, 1986, Judge Fink declined to settle the matter.

74. On December 12, 1986, Judge Fink informed the Board that the record could be closed.

75. Relying on the fact that the record was closed, Mr. James Higgins, a member of the hearing panel, left the country.

76. Mr. Higgins did not return to the United States until January 16, 1987.

77. On December 29, 1986, Robert L. Potter, Esq., submitted to the Board proposed findings of fact.

78. On January 10, 1987, Judge Fink requested that the Board reopen the record.

79. The request was granted and formal hearings were scheduled for February 2 and 9, 1987.

80. The February rather than January dates for additional formal hearings requested by Judge Fink to reopen the record were necessitated because the Honorable James M. Munley, a member of the Board, was presiding over a murder trial in Lackawanna County in January.

81. On January 29, 1987, Robert L. Potter, Esq., submitted proposed conclusions of law and a post-hearing memoranda to the Board.

82. The last hearing of the Board was held on February 9, 1987.

83. The transcript of the formal hearings excluding the February 9, 1987, formal hearing occupies 1422 pages and 93 exhibits.

84. After the completion of the formal hearings before the Board there need to be findings of fact, a recommendation to the Supreme Court of Pennsylvania, and possibly further proceedings before the Supreme Court of Pennsylvania.

85. If Judge Fink desires to run in an open election, he was required to have filed an election to do so by February 17, 1987.

86. Judge Fink has requested that this Court expedite its ruling on the preliminary injunction and that the Board expedite its actions so that he could decide in what fashion he should run for reelection by February 17, 1987.

87. Judge Fink was not prevented from making a decision as to whether to run for retention or in a general election by reason of the pendency of the judicial review proceeding or the proceedings in this Court.

88. The voter Plaintiffs are not prevented in any way from seeking to retain or elect Judge Fink as a Common Pleas Judge by reason of the pendency of the Board proceedings or this action.

89. Counsel for the Board has informed the Court that the Board will make a final determination by February 19, 1987.

90. Counsel for the Supreme Court of Pennsylvania has informed the Court that the Supreme Court of Pennsylvania will make a final determination within 30 days of the recommendation made by the Board.

### III. Discussion.

Judge Fink's complaint is based on 42 U.S.C. § 1983. He alleges that he has been deprived of his due process rights protected by the United States Constitution. He argues that the order of July 29, 1986, of the Supreme Court of Pennsylvania which suspended his decisional powers is a taking of a liberty interest without due process of law. Judge Fink requests that we issue a preliminary injunction restoring him to full adjudicative duties.

Before we may issue a preliminary injunction we must determine (1) that Judge Fink has shown that he is likely to succeed on the merits; (2) that he will be irreparably injured by denial of the relief requested; (3) that preliminary relief will not result in greater harm to the Defendants than the Plaintiffs will suffer absent the relief and (4) that preliminary relief will be in the public interest. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223 (3d Cir.1987). We shall discuss each of the above parts of the test.

### A. Likelihood of Success.

■ In order for Judge Fink to be entitled to a preliminary injunction from the Court he must show that he is likely to succeed in his 42 U.S.C. § 1983 action by proving that he has been deprived by a person acting under color of state law of his federally protected rights. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). One acting under color of state law may not deprive another of an "interest" without procedural safeguards.

*Id.* In order to determine the "interest" involved, we must look to state law. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Judge Fink retains his salary, his title, and the miniscule right to perform administrative duties. Judge Fink admits that he has not been deprived of any property interest. He argues, however, that he has been deprived of a protected liberty interest because the suspension has stigmatized him, has deprived him of his ability to perform his office, and has made it impossible for him to decide whether he should run in a retention election or in the general election against an opponent or opponents.

If Judge Fink were merely alleging that the order of July 29, 1986, had defamed him we would be obliged to dismiss this case. The liberty interest in one's good name standing alone is not a sufficient interest upon which to base a civil rights action. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Judge Fink alleges more than this. He alleges that the order of July 29, 1986, has no basis in Pennsylvania law, was issued in violation of the Constitution of the United States and deprived him of his right to serve the people of Potter County. Judge Fink's claim is similar to the claim presented in *Mosrie v. Barry*, 718 F.2d 1151 (D.C.Cir. 1983) and *Gruenburg v. Kavanagh*, 413 F.Supp. 1132 (E.D.Mich.1976).

### 1. Mosrie v. Barry.

In *Mosrie* a police captain brought a civil rights action alleging that his transfer from a prestigious captaincy in the Homicide Division of the District of Columbia Police Department to the Sixth District of the Police Department which was considered a "dumping ground" and which already had more captains than it could use was unconstitutional. Mosrie alleged that his liberty interest in his job was diminished by the transfer which was a *de facto* demotion. The Court of Appeals held that Mosrie was not deprived of any liberty interest although he had been publicly criticized prior to his being transferred and was relegated to a position which was signifi-

cantly less desirable than his old one. The Court of Appeals placed great weight on the fact that Mosrie had retained his rank and his base salary, remained in the police department's general organizational structure with the title "captain," was able to exercise some small managerial responsibilities and was technically still eligible for promotion. The Court of Appeals did not find significant the fact that in Mosrie's former position he was allowed to wear plain clothes while he was now required to wear a uniform or that he had to relinquish his private unmarked police car, clothing allowance, opportunity for compensatory time off, normal business hours and city-wide law enforcement responsibilities. The Court was also not impressed that Mosrie was made the fifth captain in a district which normally had four captains and that his actual responsibilities were minimal. Furthermore, the Court held that although Mosrie had lost several outside teaching positions because of his transfer and was unlikely to be promoted these losses were *de minimus.*

One key difference in Mosrie's complaint and the complaint of Judge Fink is that in Mosrie's case the Chief of Police had the express authority under the rules of the District of Columbia Police Department to make a lateral transfer. Judge Fink has alleged that there is no clear authority for the Supreme Court of Pennsylvania to assign him to non-decisional duties without his consent. Judge Fink's contention may well be meritorious.

Prior to the Pennsylvania Constitution of 1968 the Supreme Court of Pennsylvania had among its powers that of disciplining judges of inferior jurisdiction. These powers are referred to as the King's Bench powers because when the Supreme Court of Pennsylvania was created in 1722 it was given the powers of the Court of the King's Bench at Westminster. Act of May 22, 1722 (1 Smith's Laws 140). It is at least arguable that the Supreme Court of Pennsylvania under the Pennsylvania Constitution of 1968 has no authority to discipline a judge or to assign him to non-adjudicative

functions without a recommendation of the Judicial Inquiry and Review Board made after the formal hearings provided for in Article V, Section 18. *See, e.g. First Amendment Coalition v. Judicial Inquiry and Review Board,* 501 Pa. 129, 460 A.2d 722, 724 (1983); Woodside, *Pennsylvania Constitutional Law,* (1985) at pp. 431–435.

Article V, Section 10 of the Pennsylvania Constitution of 1968 specifically gives to the Supreme Court of Pennsylvania authority to "... assign judges from one court or district to another as it deems appropriate." A lateral transfer was not made in the Fink case. Judge Fink requested that he be assigned to another Court but no such assignment was made. This is the only section of the Pennsylvania Constitution of 1968 which refers to assignments. The phrase "... assigned to perform administrative and non-decisional judicial duties" used by the Supreme Court of Pennsylvania in its order of July 29, 1986 is a euphemism for suspension of decisional powers.

■ Article V, Section 2(a) states that the Supreme Court "... shall be the highest court of the Commonwealth and in this Court shall be reposed the Supreme Judicial power of the Commonwealth." It could be argued that pursuant to this section the King's Bench powers have been retained. There is no opinion of the Pennsylvania Supreme Court addressing this issue with respect to judges although there is a case wherein the King's Bench powers were held to have been retained for the discipline of district justices. *See In re Franciscus,* 471 Pa. 53, 369 A.2d 1190 (1966), *cert. denied,* 434 U.S. 870, 98 S.Ct. 212, 54 L.Ed.2d 148 (1977). It is our opinion that the order of July 29, 1986, was valid for three reasons.

■ First, it is our view that in spite of the opinion of former Judge Robert Woodside and dicta in *First Amendment Coalition v. Judicial Inquiry and Review Board* to the contrary, the Supreme Court of Pennsylvania will probably hold that it has retained the King's Bench powers including the power to suspend a judge absent a formal recommendation after formal hearings by the Board pursuant to Article V, Section 18.

Second, that the Plaintiffs have not shown that the order of July 29, 1986, was issued without any authority is enough to defeat their request for a preliminary injunction. We must presume that an order good on its face was issued in compliance with the law.

Third, although it was not disclosed to Judge Fink or to this Court until January 29, 1987, the Board on May 27, 1986, decided to recommend to the Supreme Court of Pennsylvania that it restrict Judge Fink to non-adjudicative duties pending the Board's investigation and did so recommend. The Supreme Court of Pennsylvania followed this recommendation some two months later. The cryptic order of the Supreme Court of Pennsylvania gave no background whatsoever and failed even to mention that the Supreme Court of Pennsylvania was acting pursuant to a recommendation of the Board. Had such mention been made it would have relieved this Court of some of its concern as to whether the Supreme Court of Pennsylvania was acting arbitrarily and in derogation of the due process rights to which Judge Fink is entitled under the federal Constitution. Therefore, although the recommendation was made before completion of the formal hearings prescribed in Article V, Section 18, of the Pennsylvania Constitution of 1968, solely for the purpose of the motion before us we shall assume that the order of July 29, 1986, was made pursuant to Pennsylvania law. We must now determine if it deprived Judge Fink of federally protected interests.

2. Gruenburg v. Kavanagh.

In *Gruenburg v. Kavanagh,* 413 F.Supp. 1132 (E.D.Mich.1976) an elected judge filed an action pursuant to 42 U.S.C. § 1983 alleging that proceedings initiated by the Michigan Judicial Tenure Commission deprived him of rights secured by the due process clause. During the pendency of proceedings before the Tenure Commission the Judge was suspended by the Michigan

Supreme Court pending final adjudication of the complaints filed against him. The Judge was not divested of his title or his salary. The suspension was pursuant to a rule promulgated by the Michigan Supreme Court. The District Court in *Gruenburg* held that judges do not have a federal constitutional right to hold office. The District Court concluded that relieving a judge temporarily from his duties was constitutional so long as the judge was afforded a post-deprivation opportunity to be heard. The District Court noted that an interim suspension without a hearing which damaged a judge's good name and his chances for reelection was not a sufficient liberty or property interest to invoke the procedural protection of the due process clause so long as there was a post-deprivation hearing.

■ It is not enough merely to offer a post-deprivation remedy, one must additionally offer it in a timely fashion. *Fink v. Supreme Court of Pennsylvania*, 646 F.Supp. 569, 572–73 (M.D.Pa. Oct. 30, 1986); *Fink v. Supreme Court of Pennsylvania*, 651 F.Supp. 1238, 1247 (M.D.Pa. 1987); *See also Gniotek v. City of Philadelphia*, 808 F.2d 241 (3d Cir.1986).

■ Although this Court cannot say that the Supreme Court of Pennsylvania and its arm the Board have acted in an expeditious fashion the Board has attempted speedily to resolve the Fink matter under its present procedures and with its present composition. Many of the delays in resolving the Fink matter were related to transfer of the Board's offices from Philadelphia to Harrisburg and the difficulty in scheduling hearings because all of the Board members are professionals with apparently other full-time duties. Board members reside in different parts of the state. Judge Fink's numerous motions including several for continuances also delayed the Board's activities. Judge Fink's request that the hearings be held on a continuous basis certainly has some merit although it may have delayed the hearings. The procedures of the Board which required that the hearings be spread out over four months need review. Changes in such procedures to permit continuous sittings which will involve reallocation of priorities of the judicial members and even possibly changes in personnel may require consideration.

■ The statement made during the hearing on Tuesday, February 10, 1987, by counsel for the Board and counsel for the Supreme Court that the Board had finished its hearings on the Fink matter the day before and that the Board would make a final recommendation to the Supreme Court of Pennsylvania within 10 days is of great import. Counsel for the Supreme Court also stated that the Supreme Court would issue a final opinion within 30 days after the final recommendation of the Board. Based on the reasons for delay given by the Board and counsel's statements to the effect that a speedy resolution of the entire case is soon to be forthcoming at this stage the Plaintiffs are unable to show that they are likely to prevail on the merits. While our decision on the first prong of the preliminary injunction test obviates the need to go further, we shall briefly discuss the three other prongs of the test for issuance of a preliminary injunction.

**B. Irreparable Injury.**

■ The second prong of the test is that the movant will be irreparably injured by the denial of relief. Judge Fink contends that such will be the case because he has been unable to decide whether to run in a retention election with no opponent or run in the general election against an opponent. An election to run in the general election was required to have been filed by February 17, 1987. Judge Fink states that he would be irreparably harmed if this Court did not restore him to the bench by February 17, 1987. We disagree. First, the decision of Judge Fink as to what manner or whether he chooses to run for election is of a purely political nature and is no different from the decisions made by anyone seeking to run for public office. Second, the fact that the Supreme Court of Pennsylvania has not yet issued a final order in the Fink

matter should not have precluded Judge Fink from registering for the open election on February 17, 1987. Judge Fink has failed to show that he will be irreparably harmed by our refusal to grant a preliminary injunction.

### C. Harm to the Defendants and the Public.

█ The third and fourth prongs of the preliminary injunction test relate to the harm the granting of a preliminary injunction would cause to the Defendants and to the public in general. The Defendants argue that if we were to restore Judge Fink to the bench they would be greatly hampered in their administration of the Pennsylvania Judicial system. They argue that public faith in the integrity of the judiciary will be destroyed and that the crisis they are presently facing with respect to the allegations of misconduct regarding a number of Philadelphia Court of Common Pleas judges would be exacerbated by our issuing a mandatory injunction. They assert that the issuance of preliminary injunctive relief would undermine the authority of the Supreme Court of Pennsylvania to take what it deems to be appropriate steps to stem the erosion of public confidence in the Pennsylvania State Judiciary. Furthermore, Defendants argue that an order issued by this Court based on the alleged illegality of the July 29, 1986, order could mean that the Pennsylvania Supreme Court would concerns and the potential harm to the public outweighs the harm to which Judge Fink would be subjected in the brief period remaining before a final decision is reached by the Supreme Court of Pennsylvania.

### IV. Summary.

This Court has determined that we should not issue a preliminary injunction; however, we shall deny the motion without prejudice. If the Board and the Supreme Court of Pennsylvania act within the time limits promised by their counsel in open court, Judge Fink will have been afforded a timely post-deprivation remedy.

### V. Conclusions of Law.

1. The order of July 29, 1986, was issued outside the procedures outlined in the Pennsylvania Constitution of 1968 Article V, §§ 10 & 18.

2. There was no timely pre-deprivation hearing afforded Judge Fink.

3. Judge Fink has not been suspended from his judgeship but has been suspended from adjudicative duties by virtue of the order of July 29, 1986.

4. The suspension of Judge Fink is of an indeterminate nature.

5. The Judicial Inquiry and Review Board has attempted to act in an expeditious manner.

6. Judge Fink does not have a reasonable probability of success on the merits of his case.

7. Judge Fink has not suffered irreparable injury by reason of the judicial review proceedings and the order of the Supreme Court of Pennsylvania of July 29, 1986.

8. The potential harm to the Defendants and to the public which would result from our issuance of a preliminary injunction restoring Judge Fink's full powers is greater than the harm which the Plaintiffs will suffer by our denial of such an injunction.

The exigencies of this case required that an order in conformity with this opinion be filed before this opinion could be typed. Such an order was filed yesterday.

### ORDER

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Currently pending before this Court is Plaintiffs' motion for a preliminary injunction reinstating Judge Fink to the bench. The Plaintiffs have asked that we rule on the motion by February 17, 1987 so that Judge Fink may make a final determination as to whether he should file documents today to run in the open election. We have completed a second draft of our findings of fact, discussion, conclusions of law and or-

der but it will be impossible to have the final draft typed today. Therefore, we shall file our order by noon today and the opinion no later than February 19, 1987.

NOW, THEREFORE, IT IS ORDERED THAT:

1. Plaintiffs' motion for a preliminary injunction reinstating Judge Fink to the Bench is denied without prejudice.

2. If the Judicial Inquiry and Review Board shall fail to make a final recommendation with respect to Judge Fink to the Supreme Court of Pennsylvania within 10 days of the date of this order, Plaintiffs may file a motion for an order compelling the filing thereof. The Board shall answer said motion within 5 working days after the filing of such a motion. No briefing shall be required.

3. If the Supreme Court of Pennsylvania shall fail to act on said recommendation of the Judicial Inquiry and Review Board within 45 days after the making of such recommendation, Plaintiffs may file a motion for an order compelling such action by that Court. The Supreme Court of Pennsylvania shall answer said motion within 10 working days of the filing of such a motion. No briefing shall be required.

4. This case shall remain on the Court's May, 1987 trial list for a final injunction hearing should that be necessary.

5. The Clerk of Court shall notify counsel of the terms of this order by telephone forthwith.