### In re Justice Rolf LARSEN.

Court of Judicial Discipline of Pennsylvania.

June 3, 1994.

Ordered Published Jan. 27, 1995.

Before McCLOSKEY, President Judge, and BURNS, MUTH, DePAUL, McGINLEY, DONOHUE and JOHNSON, JJ.

*OPINION OF THE COURT.*

Before the Court is the Application for an Interim Order filed by the Judicial Conduct Board (Board). The Application requests the suspension without pay of Justice Rolf Larsen, a justice of the Supreme Court of Pennsylvania, pursuant to Article V, § 18(d)(2) of the Pennsylvania Constitution, which authorizes this Court to suspend, with or without pay, any justice, judge or justice of the peace against whom has been filed an indictment or information charging a felony.

## ·I. BACKGROUND

On January 7, 1994, the Attorney General of Pennsylvania filed a criminal information in the Court of Common Pleas for the Fifth Judicial District (Allegheny County). The information, docketed at No. 93–13844 Criminal, charged Justice Larsen with 27 felony counts. Prior to trial, 11 counts were dismissed.

■ On March 10, 1994, the Board filed an Application with this Court requesting that Justice Larsen be suspended with pay based on the filing of the information, (the prior proceeding).[1] This matter was filed at Docket Number 3 JD 94, which is also the docket number of the Application presently before the Court. A hearing was held on March 24, 1994, at which time the Board requested that the court enter an interim order of suspension with pay, which would be converted to an interim order of suspension without pay upon a finding of guilt. By Order of Court dated March 25, 1994, the Board's request was denied without opinion. The criminal case was tried before a jury in the Court of Common Pleas of the Fifth Judicial District. On April 9, 1994, the jury acquitted Justice Larsen of 12 felony counts under Section 13 of the Controlled Substance, Drug, Device and Cosmetic Act (the Controlled Substance Act)[2] and entered guilty verdicts on Counts I and II of the information, Criminal Conspiracy, 18 Pa.C.S. § 903.[3] The Board filed the present Application on April 18, 1994, requesting suspension without pay based on the information and jury verdict.

Justice Larsen filed an Answer and New Matter to the Application on May 5, 1994 and the Board filed a Response to New Matter on May 16, 1994. By order of May 2, 1994, a hearing on the matter was set for May 25, 1994. At the hearing, exhibits showing the criminal information and jury verdicts as well as the pleadings and Court order of the prior proceeding were admitted into evidence. Counsel for Justice Larsen moved that the hearing be bifurcated so as to allow the introduction of testimony at a later date. The Court denied the motion, concluding that only certain narrow issues were properly before the Court. Respondent Justice Larsen requested an opportunity to address the Court as co-counsel in his case. This request was denied by the Court from the bench. It should be noted, however, that Justice Larsen was offered an opportunity to take the stand as a witness on his own behalf, subject to cross-examination by the Board, which he declined to do.

## II. CONSTITUTIONAL AUTHORITY

An amendment to Article V of the Pennsylvania Constitution was adopted by the electorate on May 18, 1993 changing the judicial discipline system in Pennsylvania (the 1993 Amendment).[4] Under the prior constitutional provision, a Judicial Inquiry and Review Board (JIRB) investigated complaints of judicial misconduct.[5] If JIRB found "good cause" to believe that misconduct had occurred, it filed a formal recommendation for disciplinary action with the Supreme Court of Pennsylvania. The Supreme Court, in its discretion, could adopt, reject or modify JIRB's recommendation. There was no appeal from an order of the Supreme Court.

The 1993 Amendment abolished JIRB and established a new two-tiered system of judicial discipline. Under the new system, the Board investigates allegations of misconduct

---

1. By order of the Supreme Court dated October 28, 1993, Justice Larsen was relieved of all judicial duties. This order remains in effect as of the writing of this opinion and has not been challenged. For reasons which will be explained, we do not view the Supreme Court's order as relevant to our action.

2. Act of April 14, 1972, P.L. 223, *as amended*, 35 P.S. § 780–113(a)(12).

3. Sentencing on the guilty verdicts has not yet occurred. Under Pennsylvania law, a "convic-

tion" does not occur until sentencing. *Commonwealth ex rel. McClenachan v. Reading*, 336 Pa. 165, 6 A.2d 776 (1939).

4. The 1993 Amendment was proposed by Joint Resolution No. 1 of 1992, S.B. No. 1000 and Joint Resolution No. 1 of 1993, H.B. No. 1 and was passed by the electorate at the Municipal Primary Election held on May 18, 1993.

5. Pa. Const. art. V, § 18 (amended 1993).

and may file formal complaints with this Court. The Court then decides the merits of the case and, in appropriate cases, enters an order of discipline. Appeals from decisions of the Court are to the Supreme Court, unless the respondent judicial officer is a Supreme Court justice, in which case a Special Tribunal of seven judges of the Superior and Commonwealth Courts, who are not members of the Board or of this Court, hear the appeal. The present matter does not involve such a formal complaint. Rather, the Board's Application has been filed under the authority of Art. V, § 18(d)(2), which provides as follows:

> Prior to a hearing, the court may issue an interim order directing the suspension, with or without pay, of any justice, judge or justice of the peace against whom formal charges have been filed with the court by the board or against whom has been filed an indictment or information charging a felony. An interim order under this paragraph shall not be considered a final order from which an appeal may be taken.

Prior to the 1993 amendment, the Constitution contained no provision relating to an interim order of suspension.

## III. JURISDICTION

In this case of first impression under the 1993 Amendment, Justice Larsen, in his Answer and at oral argument, has raised and argued a number of issues relating to jurisdiction of this Court. These issues, which shall be discussed in succession, are as follows:

a. The 1993 Amendment is not self-executing, but rather requires the promulgation of Rules of Procedure by the Board and the Court which have yet to be promulgated for a case of this type.

b. The denial of the Board's initial application and the lack of new grounds for the filing of an application operate to bar this Court from acting on the present Application.

c. The jury verdicts of guilt do not constitute felonies, thus depriving the Application of its constitutional basis.

### a. Is the 1993 Amendment self-executing?

Justice Larsen first argues that the 1993 Amendment is not self-executing, but rather requires the adoption of Rules of Procedure by both the Board and the Court prior to any action by these constitutionally-created bodies. The argument is apparently based on the constitutional language in § 18(a)(6)[6] and § 18(b)(4) of Article V.[7] Both the Board and the Court have adopted Interim Rules of Procedure. Neither set of Interim Rules has any provisions specifically governing the present proceeding.

■ We believe that the Constitutional Amendment is self-executing, despite the mandatory language requiring the Board and the Court to establish Rules. The noted commentator Robert E. Woodside states:

> Most provisions of a constitution are meant to be self-executing; but some require legislation to make them operative. A provision in the Constitution is self-executing when it can be given effect without the aid of legislation and when the language does not indicate an intent to require legislation.

R. Woodside, *Pennsylvania Constitutional Law* (1985) at 71.

■ Constitutional provisions creating a court are usually self-executing. 16 C.J.S. *Constitutional Law* Section 49 (1984) and cases cited therein. A constitutional provision fixing the jurisdiction of a court, which is explicit in meaning, mandatory in character, and complete in itself is usually self executing and operative without legislative action. *Id.* Therefore, we conclude that the failure

---

**6.** Section 18(a)(6) provides in relevant part that "[t]he board shall appoint a chief counsel and other staff, prepare and administer its own budget as provided by law, exercise supervisory and administrative authority over all board staff and board functions, *establish and promulgate its own rules of procedure* ..." (emphasis added). Pa. Const. art. V, § 18(a)(6).

**7.** Section 18(b)(4) provides that "[t]he Court shall adopt rules to govern the conduct of proceedings before the court." Pa. Const. art. V, § 18(b)(4).

to promulgate rules cannot operate to deprive either the Board or the Court of their constitutionally-granted jurisdiction. Rather, the remedy, if any, would be an action in mandamus to compel the adoption of rules.

### b. Did the denial of the Board's application in the prior proceeding operate to bar this Court from acting on the present Application?

■ Justice Larsen next argues that, even assuming the 1993 Amendment to be self-executing, the denial of the Board's Application in the prior proceeding operates to bar action by this Court on the present Application. As earlier noted, the basis for the Application filed in the prior proceeding was the existence of a pending information charging a felony. Because neither formal charges nor any *new* criminal indictment or information charging a felony have been filed, Justice Larsen contends that no new independent basis to act exists. We disagree.

■ The authority as to whether or not to grant an interim suspension with or without pay is constitutionally vested in this Court's discretion, the sole condition precedent being the filing of formal charges before the court *or* the filing of an indictment or information charging a felony. The latter occurred on January 7, 1994. We believe it would be entirely proper, within the discretion vested in this court, to deny an initial request but to grant a subsequent motion based on changed circumstances. Similarly, any interim order entered by this court is subject to a request by the respondent judicial officer for modification or vacation of the order, again based on changed circumstances. This is the very nature of an interim order.

In the present case, however, Justice Larsen's argument must fail for another reason. The Board's initial request was for suspension *with* pay, with a further request that such suspension be automatically converted to suspension without pay upon a finding of guilt. The present Board application requests suspension *without* pay, which is before the Court for the first time.

### c. Is there a felony for jurisdictional purposes?

Section 18(d)(2) clearly allows this Court to enter an interim order based on an indictment or information only when such indictment or information charges a felony. As noted, the information in the present matter contained 27 Counts, all of which are defined by statute as felonies.[8] We will, however, limit our discussion and analysis to the two conspiracy counts on which guilty verdicts were rendered.

■ Justice Larsen's argument here is two-fold. First, he maintains that the jury's acquittals on the substantive counts coupled with the guilty verdicts on the conspiracy counts result in the verdicts being nullified as a matter of law. We will not address the merits of this argument, as we believe that it constitutes an impermissible collateral attack on the verdicts. The proper forum for such argument is either in post-trial motions in the trial court or on appeal of the criminal convictions. For the purposes of this application, we believe that the information and subsequent guilty verdicts are binding on this Court for the purpose of establishing the existence of the charges and the finding of guilt thereon. *See*, e.g., *In re Marquardt*, 161 Ariz. 206, 778 P.2d 241 (1989) (Judicial Commission and Arizona Supreme Court were bound by finding of trial judge that respondent judicial officer was guilty of in-

---

8. Section 13 of the Controlled Substance Act sets the penalty for violation of the subsections charged, when the controlled substance is classified in Schedule IV. That section provides that a person who violates these subsections "is guilty of a *felony* and upon conviction thereof shall be sentenced to imprisonment not exceeding three years, or to pay a fine not exceeding ten thousand dollars ($10,000) or both." Section 13 of the Controlled Substance Act, 35 P.S. § 780–113(f)(3) (emphasis added).

Counts I and II of the information charge conspiracy to commit violations of the same subsections of the Controlled Substance Act. The Conspiracy charges were brought under 18 Pa. C.S. § 903. Pursuant to 18 Pa.C.S. § 905, conspiracy is a crime of the same grade and degree as the most serious offense which is an object of the conspiracy, in this case, an unclassified felony.

tentionally and knowingly possessing marijuana); *In re Suspension of Tindall,* 60 Cal.2d 469, 34 Cal.Rptr. 849, 386 P.2d 473 (1963), *cert. denied,* 377 U.S. 966, 84 S.Ct. 1644, 12 L.Ed.2d 735 (1964) (jurisdiction of trial court cannot be attacked in suspension proceeding).

■ The second argument is, we believe, properly before the Court, but readily decided. Justice Larsen argues that the charges contained in Counts I and II do not constitute felonies because the maximum sentence that may be imposed is less than five years, citing 18 Pa.C.S. § 106. It is true that the maximum punishment for either of the two Conspiracy counts is three years imprisonment. It is also true that, pursuant to 18 Pa.C.S. § 106(d), "[a]ny offense declared by law to constitute a crime, *without specification of the class thereof,* is a misdemeanor of the second degree, if the maximum sentence does not make it a felony under this section." (emphasis added). However, 18 Pa.C.S. § 106(b)(5) provides that a crime declared to be a felony, without specification of degree, is of the third degree. The underlying crimes in the present case, although they carry a maximum of three years imprisonment, are expressly declared by the General Assembly to be felonies. Absent any manifest intention of the General Assembly that the general provision of the Crimes Code should prevail over the particular provisions of the earlier enacted Controlled Substance Act, the legislative declaration controls. *Commonwealth v. Davis,* 421 Pa.Superior Ct. 454, 618 A.2d 426 (1992), *petition for allowance of appeal denied,* 535 Pa. 630, 631 A.2d 1004 (1993).

## IV. VIOLATION OF BOARD RULES OF PROCEDURE

Justice Larsen also argues that the Board's application in this matter violates its own Interim Rule 10, entitled "Interim Suspension," which provides as follows:

Rule 10. Interim Suspension.

(A) If, *when it authorizes the filing of formal charges,* the Board believes that:

(1) the *continued service* of the judicial officer is causing or may cause immediate and substantial public harm, or

(2) the *continued service* of the judicial officer may erode public confidence in the orderly administration of justice:

the Board shall direct the Counsel to file a motion in the Court seeking the suspension, with or without pay, of the judicial officer.

(B) Such motion shall be promptly served upon the judicial officer who shall be informed of the right to respond in accordance with the procedure of the Court.

Interim Rules of Procedure Governing the Judicial Conduct Board, 204 Pa.Code Ch. 42, effective November 4, 1993 (emphasis added).

■ Justice Larsen maintains that, because of the Supreme Court order relieving him of his judicial duties, he is no longer in "continued service," which is a basis for the Board's determination to file an application. We are of the opinion that the action of the Supreme Court in no way diminishes this Court's authority and ability to act independently based on Article V, § 18(d). Furthermore, since Interim Rule 10 is meant to apply only to cases in which the Board has authorized the filing of formal charges, an event which has not occurred in the present case, the entire Interim Rule is simply inapplicable to this case.

■ While we conclude that the Board has not *violated* its own rule, we agree with Justice Larsen that there exist no procedural rules which are applicable to this matter. We have not been presented, however, with any argument that lack of rules in some way prejudices his case. As noted earlier, the absence of rules does not deprive this Court of its jurisdiction. The absence of a Board rule does not prejudice Justice Larsen, as he has received sufficient notice of the Board's request. Because we view the grant or denial of an interim order as vested within our sound discretion, the absence of specific Court Rules of Procedure similarly is not prejudicial, provided that sufficient notice and opportunity to be heard has been provid-

ed. In the present matter, we believe that it has.

Having determined that the matter is properly before us and is ripe for decision, we now proceed to make factual findings.

## V. FINDINGS OF FACT

1. Petitioner is the Judicial Conduct Board of the Commonwealth of Pennsylvania.

2. Respondent is Justice Rolf Larsen, a justice of the Supreme Court of Pennsylvania.

3. Justice Larsen was elected to the Court for a 10–year term beginning in January, 1978.

4. Justice Larsen was retained for a 10–year term beginning in January, 1988.

5. The Supreme Court of Pennsylvania, by order dated October 28, 1993, relieved Justice Larsen of all judicial and administrative duties as a justice.

6. Justice Larsen has continued to be paid his salary.

7. On January 7, 1994, the Attorney General of Pennsylvania charged Justice Larsen by information with multiple felonies in the Court of Common Pleas for the Fifth Judicial District at Case No. 93–13844.

8. The Judicial Conduct Board requested an interim order of suspension from this Court by Application dated March 10, 1994.

9. This Court denied the above-referenced Application without opinion by order dated March 25, 1994.

10. A jury verdict was entered in the Court of Common Pleas for the Fifth Judicial District in Case No. 93–13844 on April 9, 1994. The jury verdict finding Justice Larsen guilty of Counts 1 and 2 read as follows:

> Count 1: Conspiracy regarding "Acquisition or Obtaining of Possession of a Controlled Substance by Misrepresentation, Fraud, Forgery, Deception or Subterfuge." Guilty
>
> Count 2: Conspiracy regarding the prescription of a controlled substance by a medical doctor unless done in good faith in the course of his professional practice, within the scope of the patient relationship, and in accordance with the treatment prin-

ciples accepted by a responsible segment of the medical profession (a)(14). Guilty

11. The criminal information alleged that the acts constituting the conspiracies charged in Counts 1 and 2 occurred "on or about various dates on and from March 13, 1981 through and including March 8, 1993," during which time Justice Larsen was a justice of the Pennsylvania Supreme Court.

12. The finding of guilt undermines public confidence in the judiciary and brings the judicial office into disrepute.

13. The Judicial Conduct Board filed the present Application for an interim order of suspension without pay in this Court on April 18, 1994.

14. Justice Larsen, through his attorney, filed an Answer and New Matter to the Application on May 5, 1994.

15. Hearing and oral argument on the matter was heard before seven judges of the Court of Judicial Discipline in Courtroom No. 1, South Office Building, Harrisburg, Pa. on May 25, 1994.

## VI. DISCUSSION

We now must decide, based on the facts before us and our constitutional authority, whether or not an interim order suspending Justice Larsen without pay is justified. Because the electorate of this Commonwealth, by adopting § 18(d)(2), has specifically vested this Court with discretion in these matters, we conclude that the intent of the provision is to allow this Court to decide matters such as this on a case by case basis, weighing those factors which the court finds relevant. Accordingly, we reject the standard proposed by the Board that suspension *with pay* be entered as a matter of course when any indictment or information charging a felony is filed, and that such suspension be automatically converted (absent extraordinary circumstances) to a suspension *without pay* upon a finding of guilt.

There may well be circumstances where the allegations contained in the information or indictment are of such serious nature that an immediate suspension without pay is deemed justified. On the other hand, certain

charges, findings of guilt, or even convictions may be of such a nature or be accompanied by such circumstances that the Court, in the exercise of its discretion, may conclude that no suspension is warranted.

 Rather than a *per se* rule as proposed by the Board, we are of the opinion that a totality of the circumstances test is more appropriate, with each case being decided on its own facts. Among the factors to be considered are the nature of the crime charged, its relation, or lack thereof to the duties of the responding judicial officer, the impact or possible impact on the administration of justice in this Commonwealth, the harm or possible harm to the public confidence in the judiciary as well as any other circumstances relevant to the conduct in question. Furthermore, while we expressly reject the Board's proposed rule, we do believe that the filing of an indictment or information charging a felony coupled with a finding of guilt on such felony constitutes *prima facie* evidence to support an application for an interim order of suspension.

We will now analyze the facts of the matter before us. Justice Larsen has been charged and found guilty by a jury of two felony counts of conspiring with his personal physician, Dr. Earl Humphreys, to obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge. As noted, the crime has been classified by the General Assembly as a felony, which by its very definition denotes a crime of a serious nature. We have made no finding as to whether the crimes of which Justice Larsen was found guilty relate to his judicial office. The conduct, however, did occur during his tenure in office and is a crime which could be classified as *crimen falsi*, as it includes elements of misrepresentation, fraud, forgery, deception or subterfuge. Where an elected judicial officer commits such acts, the public confidence in the judiciary is undermined and the judicial office is brought into disrepute. Having reviewed the relevant factors, we now must search for some guidance prior to making our determination.

Although the 1993 Amendment and the provision relating to interim orders of suspension are new, we are not entirely without precedent. Under former art. V, § 18, JIRB often recommended that our Supreme Court suspend judicial officers based on criminal conduct.[9] Additionally, other jurisdictions, although operating under different constitutional and statutory provisions, have encountered similar situations.

In a case decided more than two decades ago by our Supreme Court, JIRB recommended the suspension of a common pleas court judge who had been convicted in federal court of conspiracy to use the United States mail to perpetrate fraud. *In re Greenberg,* 442 Pa. 411, 280 A.2d 370 (1971). Greenberg was initially charged in a 21–count indictment for conspiracy and substantive mail fraud involving the use of the mail to kite bank checks during the period September, 1961 to July, 1965. The entire period in question was prior to Judge Greenberg's appointment to the bench. Like the matter now before us, Judge Greenberg was acquitted of all but the sole conspiracy charge. *Id.* at 414–15, 280 A.2d at 371.

Following the guilty verdict in federal court, Judge Greenberg limited his judicial activities to "matters of administration." Nevertheless, some eight months after the guilty verdicts and shortly after the denial of post-trial motions, JIRB recommended formal suspension. Justice Pomeroy, in an opinion joined by Justices Jones, Eagen and O'Brien, approved the JIRB recommendation "with reluctance, but in the firm belief that it is necessary in order to uphold respect for the rule of law and the administration of the judicial process in the courts of this Commonwealth." *Id.* at 413, 280 A.2d at 370.

Justice Pomeroy began by quoting Sir Francis Bacon in the 16th century:

> "The place of justice is a hallowed place; and therefore not only the bench but the foot-pace and precincts, and purprise thereof ought to be preserved without scandal and corruption ..."

---

9. Because these cases were decided by our Supreme Court under the prior constitutional provisions, we consider them as persuasive rather than controlling authority.

*Id.* at 416, 280 A.2d at 372 (quoting Bacon, "Of Judicature," as quoted in Handbook for Judges 25, 27, Am.Jud.Soc.1961).

Justice Pomeroy continued, stating that

It has been urged that the action of suspension from the judicial office as well as from performance of judicial function is too harsh because (1) the conduct in question does not involve judicial behavior and, in fact, occurred before Judge Greenberg became a judge, and (2) Judge Greenberg is performing administrative work in the Philadelphia Court of Common Pleas with great competence and is expert as a conciliator and expediter in civil cases, exhibiting skills of which the court is in dire need. We can find no merit in these arguments.

In the first place, we do not sit in judgment of Judge Greenberg nor mete out punishment to him; that is solely within the competence of the federal court in which he was tried and convicted. What we seek to do is to maintain the integrity of the office of judge to the end that that office, and through it the administration of justice, will deserve and receive the support not only of litigants and lawyers but of the public as well. It may be granted that the problem would be aggravated had the crime been committed while Judge Greenberg was holding judicial office, but this does not alter the facts before us; the crime for which the judge stands convicted covered a period of almost four years and ended only within a month of the time he ascended to the bench; it was, moreover, a crime involving fraudulent use of the mails; and it carried the potential prison sentence and fine noted in footnote 5.

*Id.* at 418, 280 A.2d at 373.[10]

The majority opinion in *Greenberg* also held that the federal crime of using the mails to defraud fell within the definition of an "infamous crime," which, upon final conviction, would constitute grounds for automatic removal from office. *Id.* at 417, 280 A.2d at 372–73. Because the *Greenberg* matter remained on appeal, the Court thought the lesser penalty of suspension to be appropriate. *Id.*

It must, of course, be noted that Justice Roberts, Chief Justice Bell and Justice Barbieri opposed the entry of the order of suspension. Even in opposition, however, these justices would have modified the JIRB recommendation to allow Judge Greenberg to continue his administrative duties, rather than ordering a total suspension. *Id.* at 420–21, 280 A.2d at 374.

Although it is unclear from the opinion and order of suspension, a later case lifting the suspension makes clear that the suspension was *without pay*. *In re Greenberg*, 457 Pa. 33, 318 A.2d 740 (1974) (*Greenberg II*). Following the entry of the Supreme Court's order of suspension on March 24, 1971, Greenberg voluntarily performed non-judicial tasks assigned to him by the President Judge of the Court of Common Pleas of Philadelphia. The federal conviction was appealed and affirmed by the Circuit Court of Appeals. *United States v. Alper, et al,* 449 F.2d 1223 (3rd Cir.1971), *cert. denied,* 405 U.S. 988, 92 S.Ct. 1248, 31 L.Ed.2d 453, *reh'g denied,* 406 U.S. 911, 92 S.Ct. 1605, 31 L.Ed.2d 822 (1972).[11]

Based on the reasoning in *Greenberg*, which we do not understand to have been reversed or modified by *Greenberg II*, we believe that the facts of the present matter justify if not compel an interim order of suspension without pay. Like Judge Greenberg, Justice Larsen has been found guilty of a serious crime involving falsehoods. Like Judge Greenberg, Justice Larsen's conduct occurred over a lengthy period of time. Unlike Judge Greenberg, however, Justice Lar-

---

**10.** The Supreme Court noted that the crime involved was defined in 18 U.S.C. § 1341 (1970) and provided a maximum penalty of a $1,000 fine or 5 years in prison. *Id.* at 415, fn. 5, 280 A.2d at 371, fn. 5. In actuality, one week prior to the filing of the Supreme Court's opinion and order suspending Judge Greenberg, the federal court had suspended imposition of sentence and placed the judge on unsupervised probation for a period of six months. *Id.* at 415, fn. 3, 280 A.2d at 371, fn. 3.

**11.** Ultimately, on December 5, 1973, President Nixon issued a full and unconditional pardon to Judge Greenberg. *Greenberg II,* 457 Pa. at 41, 318 A.2d at 744. The Supreme Court of Pennsylvania then proceeded to vacate the order suspending Judge Greenberg.

sen's conduct occurred while he was serving on the bench of the highest court in this Commonwealth.

Although constitutional and statutory provisions make direct analogies difficult, it is clear that other jurisdictions have imposed suspensions without pay for conduct which may be termed similar. The Supreme Court of Arizona suspended for one year without pay a judge who had been convicted of possession of a small amount of marijuana. *In re Marquardt,* 161 Ariz. 206, 778 P.2d 241 (1989).[12] In New York, judges or justices are suspended with pay upon being charged with a felony, and without pay upon conviction. *See La Carrubba v. Klein,* 59 A.D.2d 99, 397 N.Y.S.2d 806 (1977).

Finally, we stress that the relief granted today is of an interim nature. Because the 1993 amendment to the Pennsylvania Constitution gives this court the express authority to enter such an order at its discretion, and because federal courts have held that state judges do not have a federal constitutional right to hold office, *see, Fink v. Supreme Court of Pennsylvania,* 654 F.Supp. 437 (M.D.Pa.1987), *aff'd,* 838 F.2d 1205 (3rd Cir. 1988); *Gruenburg v. Kavanagh,* 413 F.Supp. 1132 (E.D.Mich., 1976), we conclude that the Board's Application should be granted. As we stated earlier, however, this interim order is subject to modification or vacation, based on changed circumstances. Accordingly, we enter the following Conclusions of Law and Order:

## VII. CONCLUSIONS OF LAW

1. This Court has jurisdiction over the person of Justice Larsen.

2. This Court has jurisdiction over the subject matter of the Application pursuant to Art. V, § 18(d)(2) of the Pennsylvania Constitution.

3. The conspiracy charges of which Justice Larsen was found guilty constitute a felony involving misrepresentation, fraud, forgery, deception, or subterfuge.

4. A interim order suspending Justice Larsen without pay is appropriate under the facts of this case.

CASSEBAUM, J., did not participate in the hearing or decision in this case.

## ORDER

AND NOW, this 3rd day of June, 1994, it is hereby ORDERED that:

1. The APPLICATION FOR AN INTERIM ORDER DIRECTING THE SUSPENSION OF A JUDICIAL OFFICER is hereby GRANTED.

2. Pursuant to the authority of Art. V, § 18(d)(2) of the Pennsylvania Constitution, Justice Rolf Larsen is hereby SUSPENDED WITHOUT PAY from the date of this Order and until further Order of this Court.

3. The Clerk shall forward copies of this Order to the Chief Justice of Pennsylvania, the Court Administrator of Pennsylvania and the Treasurer of Pennsylvania.

---

12. Judge Marquardt had served eighteen years on the bench as an elected Superior Court judge in Maricopa County. Upon returning from vacation in Mexico, he was charged with possession of less than nine-tenths of a gram of marijuana in Houston, Texas, a misdemeanor under Texas law. When charged, Judge Marquardt was suspended from performing judicial functions and limited to administrative duties. The one-year suspension without pay was ordered retroactive to the initial suspension, and the administrative work already performed deemed to be *pro bono.*