**In re Michael D. SMITH, District Justice In and For Magisterial District 52–3–04.**

**No. 1 JD 98.**

Court of Judicial Discipline of Pennsylvania.

May 5, 1998.

SYLVESTER, Judge.

## I. *INTRODUCTORY STATEMENT*

This case comes to us upon the Petition of the Judicial Conduct Board for an interim order under C.J.D.R.P. No. 701 suspending respondent with pay from his judicial duties pending disposition of a criminal information (filed in Lebanon County) charging respondent with felonies. Respondent filed a Motion to Dismiss the Petition and Judge Sylvester was appointed Conference Judge pursuant to C.J.D.R.P. No. 705. Judge Sylvester conducted a hearing, heard argument, and rendered a decision dismissing the Petition. C.J.D.R.P. No. 705 re-

1. Article V, § 18(b)(4) also requires that any "action" of the court "shall require approval by a

quires that any decision of the Conference Judge which has the effect of terminating a proceeding based on a Petition for Relief must be approved by a majority vote of the full Court.[1]

The full Court has reviewed Judge Sylvester's decision. We approve the decision, as well as the reasons therefor, set out in her Opinion which follows, and which we adopt as the Opinion of the Court.

## II. *FINDINGS OF FACT*

1. Respondent's mother, Betty Ann Smith, was the elected District Justice in Magisterial District 52-3-04 from 1984 to January 5, 1998.

2. In February and March, 1997 respondent, a Republican, circulated nominating petitions for the office of District Justice on both the Republican and Democratic party ballots. In this effort he was assisted by his mother.

3. Respondent did not inform the Republican Committee of Lebanon County of his candidacy nor did he seek its endorsement.

4. Respondent received 179 signatures of electors on his petition for the Republican Party ballot and 153 signatures on his petition for the Democratic Party ballot. One hundred signatures are required. The petitions were filed with the Lebanon County Board of Elections on March 11, 1997.

5. Upon learning of respondent's filing as a candidate for District Justice the Republican County leadership was angered and, at the direction of the Chairman of the Republican County Committee, a former Vice Chairman of the Committee filed a challenge to respondent's nominating petition as the Republican nominee. The challenge was based on the allegation that certain electors who signed the petition did so believing they were signing a petition to nominate respondent's mother rather than respondent—the same allegation which serves as the basis for the criminal charges subsequently filed against

majority vote of the members of the Court."

respondent, which, in turn, serve as the basis for this petition.

6. The criminal charges which have been filed against respondent include charges of violations of the Crimes Code of Pennsylvania which the Attorney General has characterized as felonies, as well as, for the same conduct, charges of violations of the Election Code of Pennsylvania which are statutorily designated as misdemeanors.

7. A hearing was held in the Court of Common Pleas of Lebanon County on March 21, 1997 and the petition to set aside the nominating petition of respondent as the Republican Nominee was dismissed.

8. On the date of the hearing, a Lebanon County Republican Committee member was quoted as saying the Committee would seek criminal charges against respondent and his mother in addition to challenging his right to be on the Republican ballot.

9. The Republican Committee supported other candidates in the primary and general elections. Despite this, and despite the filing of criminal charges against respondent on September 9, 1997, which was widely reported in the Magisterial District, respondent won the primary election on both parties' ballots on May 20, 1997 and won the general election on November 4, 1997.

10. The Respondent was formally commissioned District Justice for Magisterial District 52–3–04 on December 17, 1997 by Governor Thomas J. Ridge and took the oath of office on January 5, 1998. On that date respondent was assigned to hear civil cases by Lebanon County President Judge Robert J. Eby and has been serving his Magisterial District in that capacity to the present time.

### III. *DISCUSSION*

This Court's authority to suspend with pay comes from Art. V, § 18(d)(2):

> Prior to a hearing, the Court *may* issue an interim order directing the suspension, with or without pay, of any justice, judge or justice of the peace against whom formal charges have been filed with the Court by the Board or against whom has been filed an indictment or information charging a felony. An interim order under this paragraph shall not be considered a final order from which an appeal may be taken. (Emphasis added.)

■ As should be clear from the use of the word "may" in the Constitution, determination of whether to enter an interim order or not is discretionary, and does not flow as an automatic or ministerial consequence upon the Board's petition alleging that a respondent has been charged with a felony, or that the Board has filed formal charges with the Court—as the Board initially contended. This Court settled that question in *In re Larsen*, 655 A.2d 239 (Pa.Ct.Jud.Disc.1994) where, addressing this very same question we said:

> ... we conclude that the intent of the provision is to allow this Court to decide matters such as this on a case by case basis, weighing those factors which the Court finds relevant. Accordingly, we reject the standard proposed by the Board that suspension with pay be entered as a matter of course when an indictment or information charging a felony is filed, and that such suspension be automatically converted (absent extraordinary circumstances) to a suspension without pay upon a finding of guilt.

*Id.* at 246. We there recognized that:

> There may well be circumstances where the allegations contained in the information or indictment are of such serious nature that an immediate suspension without pay is deemed justified. On the other hand, certain charges, findings of guilt, or even convictions may be of such a nature or be accompanied by such circumstances that the Court, in the exercise of its discretion, may conclude that no suspension is warranted.

The *Larsen* court set out some guidelines for determining whether to enter an interim order of suspension:

> Rather than a *per se* rule as proposed by the Board, we are of the opinion that a totality of the circumstances test is more appropriate, with each case being decided on its own facts. Among the factors to be considered are the nature of the crime charged, its relation, or lack thereof to the

duties of the responding judicial officer, the impact or possible impact on the administration of justice in this Commonwealth, the harm or possible harm to the public confidence in the judiciary as well as any other circumstances relevant to the conduct in question.[2] Furthermore, while we expressly reject the Board's proposed rule, we do believe that the filing of an indictment or information charging a felony coupled with a finding of guilt on such felony constitutes *prima facie* evidence to support an application for an interim order of suspension.

*Id.* at 247.

First, we hasten to state that we do not regard a petition to suspend a judicial officer—even with pay—to be a matter of minor importance. Nor should the fact that some respondents do not resist the imposition of such an order have any bearing on our consideration of the question. This respondent *is* resisting, and we believe that he is correct in asserting that an order of suspension will impart a "taint" upon him and his aspirations to hold judicial office, which he will carry with him for the rest of his life. Certainly, his political enemies, if any he has, or if any he should have in the future, will be able to say to an electorate largely ignorant of the circumstances: "He was taken off the bench by the Court of Judicial Discipline." So, we believe that the decisions of this Court upon a petition for *any* order of suspension—with or without pay—involve matters of importance and deserve serious consideration.

Preliminarily we note that on January 5, 1998, the day respondent took office, Honorable Robert J. Eby, President Judge of Lebanon County, exercising the supervisory and administrative authority vested in president judges by Rule 17 of the Rules Governing Standards of Conduct of District Justices, assigned respondent to hear and adjudicate civil cases only during the pendency of the criminal charges which have been filed against him.

■ After consideration of the totality of the circumstances, we conclude that this Court should not suspend respondent from the execution of the judicial duties to which he has been assigned by the President Judge of Lebanon County, and, therefore, will deny the Board's Petition.

■ Initially we address the question of burden of proof in these proceedings. As noted earlier our constitutional authority to enter an interim order of suspension comes from Art. V, § 18(d)(2). This section makes no reference to burden of proof. However, Art. V, § 18(b)(5) which deals with the conduct of hearings on formal charges, does provide that "the subject of the charges shall be presumed innocent *in any proceeding* before this Court, and the Board shall have the burden of proving the charges by clear and convincing evidence." (Emphasis added.) We believe that this constitutional abjuration was intended to clothe respondents in interim proceedings such as this with the presumption of innocence, and, although we do not conclude that, in these proceedings, the Board's burden should be to persuade this Court by clear and convincing evidence, we do hold that it is the Board's burden to persuade the Court that the totality of the circumstances requires the entry of an interim order of suspension.

The *sine qua non* of this Court's jurisdiction to enter an interim order of suspension in this case is not that the respondent has been charged with criminal offenses but, rather, that those offenses (or at least some of them) are felonies. It therefore is appropriate to examine the events which led to the filing of felony charges against respondent and the facts upon which they are based. Those events and facts are contained in the Findings of Fact set out above.

As this Court earlier said:

This Court [is] to decide matters such as this on a case by case basis, weighing those factors which the court finds relevant.

*In re Larsen*, 655 A.2d at 246. We regard the above-recited events to be relevant in our consideration of whether it is appropriate to suspend respondent from the judicial duties

---

**2.** The Board's characterization of various allegations contained in Respondent's Motion to Dismiss as "irrelevant" (see, e.g., Board's Reply to Respondent's Motion to Dismiss, paragraphs 10, 11, 12, 24, 25, 26, 27–34, 38, 41–49) seems to fly in the face of these instructions.

to which he has been assigned by President Judge Eby.

We also find the following factors to be relevant:

1. Setting the conduct which forms the basis for the felony charges in juxtaposition with the definitions of the felonies set out in the Crimes Code (18 Pa.C.S. § 4911, Tampering with Public Records or Information, 18 Pa.C.S. § 4104, Forgery)[3] demonstrates that correlation is questionable at best. Moreover, the statutory grading of these crimes as felonies or misdemeanors raises an independent question as to their characterization as felonies. See 18 Pa.C.S. § 4911(b) and 18 Pa.C.S. § 4101(c).

2. The conduct which has been alleged to constitute violations of the Crimes Code and to support the felony charges, 18 Pa.C.S. § 4911, Tampering with Public Records and 18 Pa.C.S. § 4104, Forgery, is the same conduct which is alleged to constitute violations of the Election Code, 25 P.S. § 3513, False Signatures and Statements in Nomination Petitions and Papers and 25 P.S. § 3502, Perjury. In such a case prosecution under the Crimes Code must fail.

This Court was faced with the identical situation in *In re Cicchetti*, 697 A.2d 297 (1997). There the Board had charged the respondent with perjury and false swearing under the Crimes Code, 18 Pa.C.S. § 4902 and 4903 respectively, and also with violation of 25 P.S. § 3249 of the Election Code. In that case we cited and followed the case of *Commonwealth v. Bidner*, 282 Pa.Super. 100, 422 A.2d 847 (1981) where the Superior Court dealt with an almost identical situation. In *Bidner* the defendant was charged with perjury under Section 4902 of the Crimes Code as well as with making a false statement under oath in violation of Section 3502 of the Election Code.[4] The Superior Court affirmed the trial court's dismissal of the perjury charge under Section 4902 of the

Crimes Code. In doing so, the Court observed that:

... § 4902 is a general penal provision encompassing all willfully false statements in any official proceeding. Section 3502, on the other hand, is a more specific measure applying only to persons who violate its strictures in the exercise of their franchise privileges.

422 A.2d at 850.

The Court then looked to The Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1933 which provides:

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

*Id.* Finding no manifest intention that § 4902 of the Crimes Code should prevail over § 3502 of the Election Code, the Court noted that:

Indeed, it has been observed the "this [Crimes] Code does not apply to or include offenses in other distinct areas of the law where an offense is defined and the penalty therefor is provided such as the Vehicle Code, Liquor Code, etc." Toll, Pa.Crimes Code Annotated, p. 25 (1974). Since the Election Code establishes its own comprehensive scheme of offenses and penalties, 25 P.S. §§ 3501–3553, it would seem that the legislature intended to accord special treatment to this area of criminal conduct to the exclusion of more general provisions of the Crimes Code.

---

3. In the Amended Information respondent is also charged with a violation of 18 Pa.C.S. § 903(a)(1); Criminal Conspiracy (a felony of the third degree), which charges respondent with conspiring with his mother to commit the felonies charged, thus, this charge stands or falls with the underlying felony charges.

4. Section 3502 provides the punishment for false statements under oath made in violation of provisions of the Election Code such as Section 3249.

*Id.* The Court there reiterated a well established principle as it affirmed the dismissal of the charge of perjury under the Crimes Code:

> It is, in fact, the policy of the law not to permit prosecutions under the general provisions of a penal code when there are applicable special provisions available.

422 A.2d at 851. See also *Commonwealth v. Brown,* 346 Pa. 192, 29 A.2d 793 (1943); *Commonwealth v. Buzak,* 197 Pa.Super. 514, 179 A.2d 248 (1962); *Commonwealth v. Litman,* 187 Pa.Super. 537, 144 A.2d 592 (1958).

In *Cicchetti* we held that the charges based on violation of the Crimes Code must be dismissed and noted that:

> We have little difficulty coming to this conclusion in this case (or in any *Bidner*-type case) because the very reason why prosecution cannot proceed under the general Crimes Code is the fact that the conduct is specifically proscribed by a distinct provision of another statute of discrete and narrow focus.

*In re Cicchetti, supra,* at 697 A.2d 297 (1997). The case presently before this Court is a "*Bidner*-type case."

3. This Court, in *In re Larsen, supra,* at 247, included

> Among the factors to be considered [in ruling on petitions for interim orders such as this] ... the nature of the crime charged [and] its relation, or lack thereof to the duties of the responding judicial officer ...

Recently, in *In re Strock,* this Court entered an interim order suspending with pay the responding District Justice who had been charged with felonies. Unlike *Strock,* however, where the offenses charged involved the mishandling of funds received daily in the course of the operation of respondent's office and thus had vital relation to the duties of her office and occurred in the course of the discharge of the duties of her office, the offenses here charged have no relation to the duties of a District Justice.

4. Another factor mentioned in *Larsen* to be considered in these cases is

> the harm or possible harm to the public confidence in the Judiciary ...

*Id.* On this point respondent testified that in the course of his hearing of civil cases since January 5, 1998, none of the litigants have expressed any hesitancy in having respondent decide their cases. While we do not regard this testimony as necessarily inadmissible, we do find that, as a general proposition, such testimony is of dubious assistance to this Court in deciding, in a given case, whether public confidence in the judiciary will be harmed if a given respondent is allowed to continue to execute his or her judicial duties while felony charges, or charges filed by the Board in this Court are pending against him or her. The testimony of such witnesses is necessarily entirely subjective and, particularly in a case the innerstitching of which is purely political, such as this case, for each political ally can be found a political enemy—one to swear against the other.

There is, however, in this case, one event, the occurrence of which is undisputed, which lends some objectivity to the question, i.e., at a time when the charges against respondent were well known he was elected to the office from which we are asked to suspend him. We regard this as an expression of at least some degree of public confidence in the minor judiciary of Lebanon County which includes respondent among its members.

We are not persuaded that the public confidence in the judiciary will be harmed by respondent's continuing to discharge his duties as they have been prescribed by President Judge Eby.

5. Finally, we find that the "totality of the circumstances" in this case can be reduced and summed up as follows:

The respondent and the Republican Committee of Lebanon County have been at odds for some time. The leadership of the Committee was incensed upon learning that respondent had—and his mother had not—filed nominating petitions for a place on the ballots of both parties. The leadership immediately sought to get him off the ballot. Failing in this, they have been relentless in their endeavor to get him off the bench. Success in this endeavor depended entirely on charging respondent with felonies in order to en-

able the Board to file a petition for suspension with this Court—which it did.

Put plainly, it was not the intention of the framers of the Constitutional Amendment of 1993 that this Court would be used for the satisfaction of political pique or for the exaction of political retribution, nor is it our intention to permit it to be so used.[5]

## IV. CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter of the Petition for Relief of the Judicial Conduct Board pursuant to Art. V, § 18(d)(2) of the Pennsylvania Constitution.

2. This Court has jurisdiction of the person of respondent pursuant to Art. V, § 18 of the Pennsylvania Constitution.

3. The totality of the circumstances of this case requires that the Judicial Conduct Board's Petition for Relief be denied.

4. An interim order will be entered denying the Petition of the Judicial Conduct Board to suspend respondent with pay from his judicial duties.

BYER, J., files a Dissenting Opinion.

BYER, Judge, dissenting.

The Judicial Conduct Board has not filed formal charges against District Justice Smith. Therefore, Pa. Const. Art. V § 18(d)(2) authorizes interim suspension only if the Commonwealth has filed an indictment or information charging him with a felony. The Commonwealth has done so. However, the majority has denied the Board's petition for an interim order of suspension based upon the majority's conclusion that the felony charge here is inappropriate because, as a matter of substantive criminal law, the Commonwealth may charge District Justice Smith only with a misdemeanor. I cannot agree with that rationale, because it validates an inappropriate collateral attack on the criminal charges and is an unwarranted intrusion by our Court into the pending criminal proceedings.

My esteemed colleagues in the majority ultimately might be correct that the holding of *Commonwealth v. Bidner*, 282 Pa.Super. 100, 422 A.2d 847 (1981), would require dismissal of the felony charges now pending against District Justice Smith. I express no opinion on that issue and believe that the majority likewise should not purport to decide that issue. District Justice Smith has raised that issue in his omnibus motion in the criminal proceedings now pending in the Court of Common Pleas of Lebanon County. That motion has not yet been decided by the Court of Common Pleas (although it appears to have been the subject of a pre-trial hearing on March 23, 1998), but that is the court which must decide the issue.

Our holding in *In re Cicchetti*, 697 A.2d 297 (Pa.Ct.Jud.Disc.1997), does not support the majority's holding in this case. In *Cicchetti*, the Board charged the respondent with misconduct based upon allegations that he had filed false campaign expense reports and executed false affidavits with respect to the facts in those reports. In considering those charges, we held that under *Bidner* we could not consider the conduct alleged by the Board to constitute a felony but only a misdemeanor (based upon which we ultimately imposed discipline). However, in *Cicchetti* the Commonwealth had not charged the re-

---

5. In a Memorandum of Law the Board has suggested that any consideration this Court might give to denying the Board's petition would necessarily involve an "attempt to predict" how the Lebanon County Court might dispose of issues raised there regarding the sufficiency of the charges. We have two observations: First, far from attempting to predict outcomes in other courts, this Court performs its constitutional duty without reference to proceedings in other courts. This Court's duty, as explained in *Larsen*, is to consider the "totality of the circumstances" and that includes consideration, inter alia, of the criminal charges which form the basis for our jurisdiction as well as the events alleged to have given rise to those charges. Our decisions in these cases are based on different criteria than those employed in the criminal courts—as this Court said in *Larsen*, "certain charges, findings of guilt, or even convictions may be of such a nature or be accompanied by such circumstances that the Court, in the exercise of its discretion may conclude that no suspension is warranted." 655 A.2d at 241. Second, the Board's argument that this Court may not consider whether a respondent is properly charged with a felony, but only that a felony has been charged, is the same argument which it made in *Larsen* and which we rejected in *Larsen*.

spondent with criminal offenses based upon the alleged misconduct; the accusations appeared only in the Board's complaint before us. The pending criminal case here renders *Cicchetti* distinguishable.

If the Court of Common Pleas dismisses the felony charges against District Justice Smith, then we must deny or vacate any interim suspension, because there would be no pending felony charge and the Board has not filed formal charges against respondent. However, if the Court of Common Pleas denies District Justice Smith's omnibus motion, may this Court disregard that ruling and refuse to impose an interim suspension by concluding that the Court of Common Pleas incorrectly decided the substantive criminal law question? I would hope the majority would agree that we may not exercise de facto appellate review of Common Pleas Court decisions in criminal cases, but I think the intrusion into the criminal proceedings we make here is no different from the intrusion which would occur if we made such a decision after the Court of Common Pleas had reached a contrary conclusion.

In short, I would not decide the Board's petition on the basis of *our* conclusion of how the Court of Common Pleas should decide this important legal issue in the criminal case. By entertaining Respondent's collateral attack on the felony charge, we unfairly place the Board in the position of having to argue the substantive issue of criminal law even though the Board does not represent the Commonwealth in the criminal case. Moreover, by deciding the substantive criminal law issue in the absence of counsel for the Commonwealth in the criminal case, we deprive ourselves of the ability to decide the issue (even if it were proper for us to do so) in the context of the arguments made by the

Commonwealth in opposition to the omnibus motion in the criminal case. I do not know if the Commonwealth has an argument which would persuade the Court of Common Pleas in the criminal case that *Bidner* is distinguishable. That is why I believe we should not decide the issue in advance of the Court of Common Pleas, any more than we should engage in second guessing such a decision in the criminal case.

Considering this case in the context of the pending criminal charges, the record establishes that the Commonwealth has charged District Justice Smith with a felony involving an act of dishonesty as part of the process by which he was elected to the bench. Under the circumstances, I would grant the Board's petition to suspend District Justice Smith, with pay, until those charges are resolved.[1] If the Court of Common Pleas decides that the felony charges must be dismissed, then we should vacate that suspension (assuming that the Board still has not filed formal charges or convinced us that any formal charges warrant interim suspension). However, in no circumstances would I decide the substantive criminal law issue. Our obligation of comity to that segment of our Unified Judicial System which the General Assembly has vested with jurisdiction over the criminal case should preclude us from deciding a question in a manner which steps beyond our jurisdiction and creates the possibility of a conflict between our decision and that ultimately to be made by the Court of Common Pleas. Instead, comity requires that we defer to the Court of Common Pleas on a question which arises in a case pending before it and is not within our special expertise.

As a discretionary matter, I could be persuaded to postpone any decision of the petition for interim suspension for a reasonable time until the Court of Common Pleas decides District Justice Smith's pending omni-

---

1. This analysis is consistent with the "totality of the circumstances" test as adopted in *In re Larsen*, 655 A.2d 239 (Pa.Ct.Jud.Disc.1994). That test requires that we not act solely on the basis that a judicial officer is charged with a felony but that we also consider the relationship of the charge to the judicial function, to the administra-

tion of justice and to the public's confidence in the judiciary. Nothing in the *Larsen* opinion suggests that the "totality of the circumstances" includes a collateral inquiry into the legal validity of a criminal charge pending in the Court of Common Pleas.

bus motion. However, with respect, I dissent from our decision to dismiss the petition based upon our initial determination that, as a matter of substantive criminal law, the Commonwealth acted improperly in charging respondent with a felony.[2]

**2.** I also respectfully disagree with the majority opinion to the extent it relies upon political factors. I cannot agree that the potential use by political opponents of a suspension order by this Court is a factor we should take into account; a vindication in the criminal case, followed by appropriate action by our Court, would be a sufficient remedy. Furthermore, I cannot agree that the election of respondent after these charges first surfaced is a factor to be considered in determining whether suspension is required to avoid possible erosion of public confidence in the judiciary, particularly where the preliminary hearing and the filing of the criminal information occurred *after* the election.