805 A.2d 663 (2002)
Anthony E. BURGER
v.
The BOARD OF SCHOOL DIRECTORS OF THE McGUFFEY SCHOOL DISTRICT and the School District of McGuffey,
Appeal of The School District of McGuffey.
Commonwealth Court of Pennsylvania.
Argued May 8, 2002.
Decided August 21, 2002.
*664 Michael I. Levin, Huntingdon Valley, for appellant.
Ronald G. Backer, Pittsburgh, for appellees.
Before COLINS, President Judge, McGINLEY, Judge, SMITH-RIBNER, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, SIMPSON, Judge, LEAVITT, Judge.
OPINION BY Judge LEADBETTER.
In this mandamus action, the McGuffey School District (District) and its Board of Directors (Board) appeal from the December 1, 2000, order of the Court of Common Pleas of Washington County (trial court). At issue is whether the District violated Section 1080 of the School Code[1] when it suspended District Superintendent Dr. Anthony Burger (Dr. Burger) pending a removal hearing on grounds that he was sexually harassing employees. For reasons that follow, we conclude that mandamus does not lie and, therefore, we reverse.
In 1998, Dr. Burger was duly elected by the District to be the superintendent of schools for a five year term expiring August 4, 2003.[2] The following day, Dr. Burger and the District entered into a contract governing his employment for the term. Although the chronology presented by the record is not precise, it appears that shortly after Dr. Burger began to serve as superintendent, allegations of sexual harassment began to surface. Dr. Burger's secretary, Sheryl A. Fleck, complained that Dr. Burger engaged in a pattern of inappropriate sexual behavior and retaliation. Specifically, in a letter directed to the District, Fleck alleged the following:
Within less than one (1) week of working with Ms. Fleck, Dr. Burger expressed his attraction to her and encouraged her to acknowledge a mutual attraction.
....
Ms. Fleck attempted to work amicably with Dr. Burger and explained to him that she was otherwise committed, and did not want to mix business with pleasure. During the fall of 1998, Dr. Burger made repeated advances to Ms. Fleck, including but not limited to inappropriate *665 physical touching of Ms. Fleck during the course of business meetings and in encounters within the school facilities.
At the end of 1998, Ms. Fleck finally responded very briefly to those advances. She thereafter sought counseling and advised Dr. Burger very adamantly and clearly that she wanted nothing to do with him personally. That discussion occurred in January 1999.
Initially, Dr. Burger would not be rebuffed. He demanded that Ms. Fleck attend a variety of out-of-school functions with him. He required her to meet him at his home in order to travel with him to the functions. He continued to touch her inappropriately, rub against her and assert to her that "I will have you; I get what I want."
R.R. at 165a-66a. Fleck further alleges that after she continued to rebuff Dr. Burger, he engaged in a course of retaliatory conduct that included, inter alia, demoting her, requiring unreasonable relocation, added job responsibilities, undermining her professional reputation, and personally interfering with her day-to-day work.
After receiving Fleck's letter, the District retained attorney Bruce Campbell to investigate her allegations. Thereafter on August 14, 2000, the District suspended Dr. Burger with pay as Campbell continued investigating. As part of his investigation, Campbell held an informal hearing during which he questioned Dr. Burger, with his counsel present, about Fleck's allegations. Based on his investigation and the hearing, on October 26, 2000, Campbell reported to the District that sufficient evidence existed to warrant removing Dr. Burger pursuant to Section 1080.[3] Thereafter on November 2, 2000, the District suspended Dr. Burger without pay via Board Resolution 00-01-01 (resolution). The District further provided in the resolution for a formal dismissal hearing[4] and that Fleck be granted intervenor status therein.
On November 17, 2000, Burger filed a complaint in mandamus and a motion for peremptory writ seeking reinstatement and/or reinstatement of his salary and benefits, and further that any persons alleging sexual harassment be barred from participating in the hearing. After considering arguments, the trial court entered an order granting the peremptory writ in mandamus, rescinding Dr. Burger's suspension and restoring his compensation and benefits. It is from this order that the District now appeals.[5] The District argues first that the trial court erred by granting mandamus relief for the performance of a discretionary act, and second that mandamus is inappropriate because Dr. Burger's exclusive remedy is an appeal pursuant to local agency law.
*666 "Mandamus is an extraordinary writ which will issue `to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy.'" Shaler Area Sch. Dist. v. Salakas, 494 Pa. 630, 636, 432 A.2d 165, 168 (1981) (quoting Philadelphia Newspapers, Inc. v. Jerome, 478 Pa. 484, 494, n. 11, 387 A.2d 425, 430, n. 11 (1978)). If any one of the foregoing elements is absent, mandamus does not lie. In the case at bar, we agree with the District that Dr. Burger has an adequate statutory remedy.
Section 1080 of the School Code (the Code), Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 10-1080, provides for the removal of superintendents as follows:
District superintendents and assistant district superintendents may be removed from office, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as to each member of the board of school directors.
From an adverse final decision of the board, the superintendent may appeal to the court of common pleas, pursuant to the Local Agency Law, 2 Pa.C.S. § 752. If common pleas finds that the board lacked substantial evidence to find grounds enumerated in § 10-1080, the removal can be reversed, and the superintendent awarded reinstatement and back pay. This remedy is complete and adequate. Where the Local Agency Law provides an adequate remedy, an action in mandamus is precluded. See Wagonhoffer v. Philadelphia Bd. of License and Inspection Review, 35 Pa. Cmwlth. 440, 386 A.2d 622, 624 (1978); Hutnik v. Sch. Dist. of the City of Duquesne, 8 Pa.Cmwlth. 387, 302 A.2d 873 (1973).
Nonetheless, Dr. Burger relies on this court's opinion in Burns v. Uniontown Area Sch. Dist., 748 A.2d 1263 (Pa. Cmwlth.2000) to argue that mandamus relief is appropriate here. We believe that Dr. Burger reads Burns too expansively. In Burns, the superintendent's contract was rescinded by an incoming board of school directors that was dissatisfied with the choice made by its predecessor. None of the grounds for which Section 1080 permits removal were alleged, and under those circumstances, we held removal to be per se unauthorized.[6] In contrast, the suspension here was pursuant to and for grounds enumerated in Section 1080. Dr. Burger argues that, like removal at the pleasure of the Board, suspension without pay prior to a full due process hearing is per se unlawful, even for cause set forth in the School Code.[7] We disagree.
It is true that while Section 1080 provides the exclusive method for removing *667 superintendents, it is entirely silent with respect to suspension. However when serious charges of misconduct are raised, suspension pending removal is an inherent managerial prerogative.[8]See Sch. Dist. of Philadelphia v. Kushner, 109 Pa.Cmwlth. 120, 530 A.2d 541, 542-43 (1987), citing Kaplan v. Sch. Dist. of Philadelphia, 388 Pa. 213, 130 A.2d 672 (1957); Eastern York Sch. Dist. v. Fasnacht, 64 Pa.Cmwlth. 571, 441 A.2d 481 (1982). In the appeal of a disciplinary suspension, our Supreme Court rejected arguments strikingly similar to those raised by Dr. Burger. In Rike v. Secretary of Education, 508 Pa. 190, 494 A.2d 1388, 1390-91 (1985), a teacher was accused of sexual harassment. The applicable provision of the School Code, Section 1129, mandated that after hearing, "[I]f less than two-thirds of all of the members of the board vote in favor of discharge, the professional employe shall be retained and the complaint shall be dismissed." 24 P.S. § 11-1129.[9] After a hearing, the school board found unanimously that Rike had committed the acts in question and suspended him without pay for the remainder of the school year, but by a vote of less than two thirds of its members. The teacher argued first that although the board had the express power to terminate his employment under the Code, the board lacked the lesser power of suspension, as to which the Code was silent. In rejecting this argument, the court stated:
Rike's argument that the Board was without power to suspend after conducting a hearing pursuant to Section 1122 and 1127 is likewise without merit. That a board of school directors possesses the authority to impose lesser forms of discipline than complete termination of a tenured teacher's contract is by now beyond question ... Inherent in the school district's power to employ is the power to control certain activities of teachers, Kaplan v. Philadelphia School District, 388 Pa. 213, 130 A.2d 672 (1957). As stated by [Chief Justice] Nix in Neshaminy Fed. Of Teachers v. Neshaminy School District, 501 Pa. 534, 545, 462 A.2d 629, 635 (1983): "The power to regulate conduct, of course, would be illusory absent a concomitant power to enforce rules through the imposition of some form of discipline."
Rike, 508 Pa. at 195, 494 A.2d at 1390-91. Next, Rike argued that, "it was improper for the Board to impose a suspension by vote of less than the number required to *668 effect a dismissal." The court rejected the argument as meritless. It noted:
In contrast to the clear expression of legislative intent that the most drastic form of discipline be accomplished only with the approval of two-thirds of the entire board, the Public School Code is totally silent as to what protections must be afforded tenured teachers prior to [suspension]. If the legislature intended to require two-thirds approval of the board every time a teacher is disciplined, they could have inserted such a provision in the Code. Their not having done so we cannot add it....
Id. at 196-97, 494 A.2d at 1391. Although Rike and the other cases cited above arose in the context of professional employees rather than a superintendent, such employees are afforded similar statutory protection from removal under Section 1122 of the Code, 24 P.S. § 11-1122 (specifying the grounds for removal),[10] as well as Section 1129. Thus we believe the principles adhered to in these decisions are fully applicable here.
Accordingly, we reverse the trial court's order.

ORDER
AND NOW, this 21st day of August, 2002, the order of the Court of Common Pleas of Washington County in the above captioned matter is REVERSED.
DISSENTING OPINION BY Judge PELLEGRINI.
I respectfully dissent from the majority's holding that a school superintendent who occupies a statutory office for a term of years can be suspended without pay and without a hearing because that holding is at variance with the School Code.
On August 5, 1998, the School District of McGuffey's Board of School Directors (Board) elected Anthony E. Burger (Burger) as the District's Superintendent for a five-year term due to expire August 4, 2003, and the parties entered into a five-year employment contract. After allegations of sexual harassment were made against him, an investigation conducted by a private attorney on behalf of the District indicated support for the allegations, and on November 2, 2000, the Board voted to set a formal dismissal hearing and, pending that dismissal hearing, suspended him without pay or benefits.
Burger then filed a complaint in mandamus and a motion for peremptory judgement seeking reinstatement and/or reinstatement of his salary and benefits. The Court of Common Pleas of Washington County (trial court) granted Burger's motion for peremptory judgment rescinding the Board's suspension of him without pay and restored any compensation and benefits owed to Burger under his employment contract because Section 1080 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 10-1080,[1] did not authorize suspension without pay.
*669 Reversing the trial court and while acknowledging that Section 1080 of the School Code provides the exclusive method for removal of superintendents and is silent with respect to suspension, the majority nonetheless goes on to hold that when "serious charges" of misconduct have been raised, a school district has an "inherent managerial prerogative" to suspend a superintendent of schools. I disagree with the majority's holding for the following reasons because the School Code does not permit any disciplinary action resulting in the loss of pay without first holding a full blown due process hearing.
First, I disagree because there is no "inherent managerial authority" by a school board to suspend without pay a school superintendent. The General Assembly took away that inherent management authority when it enacted Section 1073(b) of the School Code, 24 P.S. § 10-1073, requiring that school superintendents be selected for a term of years, and once selected, their contracts are renewed for the same term of years unless another school superintendent is selected. It provides:
At a regular meeting of the board of school directors occurring at least one hundred fifty (150) days prior to the expiration date of the term of office of the district superintendent, the agenda shall include an item requiring affirmative action by five or more members of the board of school directors to notify the district superintendent that the board intends to retain him for a further term of from three (3) to five (5) years or that another or other candidates will be considered for the office. In the event that the board fails to take such action at a regular meeting of the board of school directors occurring at least one hundred fifty (150) days prior to the expiration date of the term of office of the district superintendent, he shall continue in office for a further term of similar length to that which he is serving.
By giving a school superintendent a term of office, the General Assembly, in effect, removed any "inherent managerial right" of the school board to take any action regarding a school superintendent not in accordance with what the School Code provides. By providing for a term of office for a school superintendent, the General Assembly wanted the school superintendent to have independence from the school board. By holding that a school board has an "inherent managerial right" to suspend for "serious" offenses[2], will subject school superintendents from interference that it was the intent of the General Assembly, when it provided for a term of years, to vitiate.
Second, nowhere, as the majority admits, does the School Code give the right to a school board to suspend a school superintendent without pay and before a hearing. Section 1080 of the School Code provides that a district superintendent may be "removed from office, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality." In Burns v. Uniontown Board of Directors, 748 A.2d 1263 (Pa. Cmwlth.2000), we held that Section 1080, *670 which requires a hearing with notice and removal for one of the four reasons listed in that provision, is the only method by which a duly elected superintendent may be removed from office. In that case, the board of school directors did not follow the removal process required by Section 1080. Rather, the board voted at a special meeting to rescind the superintendent election and subsequent contract after the superintendent, Burns, had been duly elected to a new term with a new contract. In response, Burns filed an action in mandamus and a motion for peremptory judgment. Finding no immediate irreparable harm, the trial court denied Burns' motion. On appeal, we reversed the trial court's denial of mandamus, noting that a mandamus action was appropriate in that case because it involved the enforcement of a mandatory legal duty imposed on school authorities by the School Code, stating:
The harm sought to be repaired in the instant mandamus action is not merely repairing the breach of the contract between Superintendent and Board (as that relief is sought in the appeal at No. 2020 C.D. 1999) or the monetary remedies available under the tort claims. The relief of mandamus is, on the other hand, the relief afforded for the statutory breach in order to enforce the School Code's provisions regarding election, setting compensation and enforcement of the duties of a duly elected superintendent.
748 A.2d at 1269.
Because a school district is an arm of the legislature and its authority springs only from legislative enactments, Giacomucci v. Southeast Delco School District, 742 A.2d 1165 (Pa.Cmwlth.1999), and nowhere in Section 1080 is a school district authorized to "suspend" a superintendent on any basis, the District erred in suspending Burger. Moreover, the District's suspension of Burger without pay or benefits effectively resulted in a removal from office without a hearing.
Third, by saying that a school board has an "inherent managerial right" to suspend independent of Section 1080 of the School Code, even if that position was correct, would make that decision an administrative determination which is what the majority seems to suggest when it concludes that Burger is not entitled to mandamus relief because he has a complete and adequate statutory remedy for any personal or contractual wrongs under Section 752 of the Local Agency Law,[3] including reinstatement and back pay. Ignoring that what Burger sought was relief against the District for its failure to follow the statutorily-mandated removal process as outlined in Section 1080 of the School Code and was not seeking relief from any personal or contractual wrongs, making mandamus the appropriate remedy, Burns,[4] the school *671 board would still be required to pay him until he received a full and complete due process hearing.
Section 553 of the Local Agency Law provides that:
No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony may be stenographically recorded and a full and complete record may be kept of the proceedings. In the event all testimony is not stenographically recorded and a full and complete record of the proceedings is not provided by the local agency, such testimony shall be stenographically recorded and a full and complete record of the proceedings shall be kept at the request of any party agreeing to pay the costs thereof.
2 Pa.C.S. § 553.
Fourth, and finally, the majority's reliance on our Supreme Court's decision in Rike v. Secretary of Education, 508 Pa. 190, 494 A.2d 1388 (1985) is misplaced. In that case, a teacher was accused of sexual harassment and following an investigation, the district superintendent recommended to the school board that the teacher's contract be terminated. Following a full blown hearing before the school board, the school board found that the teacher committed acts of cruelty and immortality and, rather than terminating the teacher, suspended him without pay or other benefits for the remainder of the school year. Appealing that suspension, the teacher argued that the school board was without authority to impose a suspension after conducting a revocation hearing pursuant to Sections 1122 and 1127 of the School Code, 24 P.S. §§ 11-1122 and 11-1127. Rejecting that argument, our Supreme Court held that a school board's authority to impose lesser forms of discipline than complete termination of a tenured teacher's contract was beyond question. Rike does not apply to the facts of this case because the school teacher was given a full evidentiary hearing before the school board prior to any disciplinary action being taken, while Burger was suspended without pay or benefits before any hearing, not to mention that a teacher, unlike a school superintendent, is not given a term of office by the School Code.
For the foregoing reasons and based on our decision in Burns, I disagree with the majority's holding that Burger had an adequate and exclusive remedy under Section 752 of the Local Agency Law to challenge the District's failure to follow the removal process required by Section 1080 of the School Code. As noted in Burns, the District's failure to follow the removal process required by Section 1080 is extraordinary in and of itself and, therefore, mandamus was a proper method to correct the District's failure to comply with its mandatory duties under the School Code.
Accordingly, I respectfully dissent.
Judge SIMPSON joins.
NOTES
[1] Section 1080 of the School Code (the Code), Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 10-1080.
[2] Section 1073 of the Code, 24 P.S. 10-1073, provides that the board of school directors must elect a superintendent to serve a term of three to five years.
[3] Campbell reported only the existence of evidence supporting removal. At this stage in the process Campbell did not reveal to the District the nature of the evidence.
[4] Counsel advised us at oral argument that Dr. Burger was removed following the subsequent formal hearing before the Board.
[5] This case was first argued before a three judge panel of our court. The case was then re-listed and argued before our court en banc on May 8, 2002. We note the District and the Board also appealed the November 28, 2000 order of the trial court concerning Fleck's intervenor status. However, the issues raised by that order are moot and therefore we shall not address them.

We also note that contrary to the trial court's assertion, we have jurisdiction over this matter pursuant to Pa. R.A.P. 311(a)(5), which specifically allows for an appeal as a matter of right from an order granting peremptory judgment in mandamus.
[6] Specifically, we stated:

Finally, the School Code provides only one mechanism for the removal of a duly elected superintendent. That mechanism is limited to a due process hearing with notice and removal for only one of four stated reasons. There is no dispute that the Board in this case did not follow that statutory scheme to remove Superintendent by votes to "rescind" both the election and the contract without any authority after he was duly elected to a new term and had executed a new contract. There is no authority in the School Code for the action of rescission by the reorganized 1997 Board.
Burns v. Uniontown Area Sch. Dist., 748 A.2d 1263, 1267-68 (Pa.Cmwlth.2000) (footnote omitted).
[7] Essentially, his position is that the statutory remedy is inadequate because he could not obtain back pay if the charges were ultimately proven to be well founded.
[8] Exercise of this prerogative is, of course, subject to the employee's Loudermill rights, at least if the employee, like the superintendent here, has a protected property right in continued employment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-43, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (where an individual has a property right in employment, he may be suspended prior to a full due process removal hearing, but only after he has been afforded notice of the charges and an opportunity to respond.) Here, the Board did not suspend Dr. Burger without pay until after the hearing conducted by counsel, which fully complied with Loudermill.
[9] Section 1129 provides, in more complete pertinent part:

After fully hearing the charges or complaints and hearing all witnesses produced by the board and the person against whom the charges are pending, and after full, impartial and unbiased consideration thereof, the board of school directors shall by a two-thirds vote of all the members thereof, to be recorded by roll call, determine whether such charges or complaints have been sustained and whether the evidence substantiates such charges and complaints, and if so determined shall discharge such professional employe. If less than two-thirds of all of the members of the board vote in favor of discharge, the professional employe shall be retained and the complaint shall be dismissed.
Section 1129 of the Code, 24 P.S. § 11-1129.
[10] Section 1122 provides, in pertinent part:

The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employee.
Section 1122 of the Code, 24 P.S. § 11-1122.
[1] Section 1080 of the School Code provides:

District superintendents and assistant district superintendents may be removed from office, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as each member of the board of school directors.
[2] Just by saying that a school board can suspend for only "serious" offenses is, in effect, amending the School Code because either a school board has the power to suspend or does not have the power to suspend under the School Code.
[3] Section 752 of the Local Agency Law provides:

Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).
2 Pa.C.S. § 752.
[4] In Burns, we held that there were no other adequate remedies available to a superintendent in such a situation, stating:

The actions of the re-organized Board to remove Superintendent by a mechanism other than expressly provided by law in the School Code is extraordinary in and of itself. The legislature apparently did not contemplate that a school board would ignore the removal processes it provided in the School Code and did not provide specific relief to a superintendent in this instance.
748 A.2d at 1269.