**In re Jaffe**

Court of Judicial Discipline, No. 6 JD 02.

BEFORE: SPOSATO, *P.J.,* LEADBETTER, COGNETTI, HORGOS, O'LEARY, O'DELL SENECA, BEASLEY AND HALESEY, *JJ.*

SPOSATO, *P.J.,* January 15, 2003—

## I. INTRODUCTORY STATEMENT

Before the court is the petition of the Judicial Conduct Board for an interim order suspending respondent, Joseph A. Jaffe, from his judicial office without pay. The board seeks this order under Article V, Section 18(d)(2) of the Pennsylvania Constitution. That section provides:

"Prior to a hearing, the court may issue an interim order directing the suspension, with or without pay, of any justice, judge or justice of the peace against whom formal charges have been filed with the court by the board or against whom has been filed an indictment or information charging a felony. An interim order under this paragraph shall not be considered a final order from which an appeal may be taken."

## II. FINDINGS OF FACT

Respondent is a duly-elected judge of the Court of Common Pleas of Allegheny County and has held that office since January 1, 1985.

On August 8, 2002 he was granted administrative leave with pay by order of the President Judge of Allegheny County.

On September 17, 2002, respondent was indicted by a Grand Jury in the United States District Court for the Western District of Pennsylvania. The indictment charges that the respondent:

"(1) Solicited money in the performance of his judicial duties.

"(2) Violated the Hobbs Act by extortion (a felony), as that term is defined in title 18 of the United States Code, section 1951(b)(2), in that respondent solicited payment of money from a partner in the Goldberg, Persky, Jennings and White P.L. law firm with a main office at 1030 Fifth Avenue, Pittsburgh, Pennsylvania, which then had a substantial number of cases pending before the respondent. While committing the violation of the Hobbs Act, the respondent verbally described his 'thought process' to the above mentioned partner as 'immoral and illegal'; however, in spite of this personal assessment of thought, the respondent offered 'unfettered access' to the partner for 'ex parte' contact.

"(3) The above charge is graded as a felony punishable by a maximum of 20 years imprisonment."

On October 16, 2002 a superseding indictment was issued by the grand jury charging that the respondent:

"(1) Solicited money in the performance of his judicial duties.

"(2) Violated the Hobbs Act by extortion (a felony) as that term is defined in title 18, United States Code, section 1951(b)(2), in that, respondent solicited payment of money not due him or his office from Edwin Beachler, a partner in the Caroselli, Beachler, McTiernan, and Conboy law firm, which then had a substantial number of cases pending before the respondent.

"(3) Violated the Hobbs Act by extortion (a felony) as that term is defined in title 18 of the United States Code, section 1951(b)(2), in that, respondent attempted to obtain property in the form of payment not due him from a

law firm partner, with his consent, induced by the wrongful use of fear, that is, respondent did solicit payment of financial support for his family and also employment for himself after incarceration, from the aforementioned Edwin Beachler, a partner in the Caroselli, et al. law firm, in exchange for the respondent's concealment of Beachler's role in the extortion payment to respondent as set forth in Count 2 of the superseding indictment. That charge is graded as a felony, punishable by a maximum of 20 years imprisonment.

"(4) The above charge is graded as a felony punishable by a maximum of 20 years imprisonment.

## III. DISCUSSION

Because indictments have been filed against respondent charging him with felonies, section 18(d)(2) of Article V of the constitution authorizes this court to enter an interim order now—prior to a hearing—suspending him with or without pay.

The constitutional amendments of 1993, establishing this Court of Judicial Discipline, invest this court with authority to enter two different types of orders.

The first—the type we are most frequently requested to enter—is an order imposing a sanction against a judicial officer. This type of order is authorized by Article V, Section 18(b)(5) of the constitution and is to be entered in cases where the board has filed formal charges, and only after "a hearing or hearings." Section 18(b)(5) also specifies certain rights to which judicial officers shall be entitled in such hearings. Orders under Section 18(b)(5) are final and appealable.

The second type of order which the Constitution empowers this court to enter is authorized by Article V, Section 18(d)(2). These orders are styled "interim orders" and are authorized to be entered "prior to a hearing." These orders are not final and are not appealable.

We hold that the rights set out in Section 18(b)(5) as available to judicial officers in proceedings leading to final orders of sanctions are not available in interim proceedings under Section 18(d)(2). The fundamental constitutional scheme negates any other conclusion. We also hold that that constitutional scheme in no way offends any overweening notion of due process which may be said to derive from the Constitutions of the United States or of Pennsylvania.

Section 18(b)(5) of Article V provides:

"Upon the filing of formal charges with the court by the board, the court shall promptly schedule a hearing or hearings to determine whether a sanction should be imposed against a justice, judge or justice of the peace pursuant to the provisions of this section. The court shall be a court of record, with all the attendant duties and powers appropriate to its function. Formal charges filed with the court shall be a matter of public record. All hearings conducted by the court shall, be public proceedings conducted pursuant to the rules adopted by the court and in accordance with the principles of due process and the law of evidence. Parties appearing before the court shall have a right to discovery pursuant to the rules adopted by the court and shall have the right to subpoena witnesses and to compel the production of documents, books,

accounts and other records as relevant. The subject of the charges shall be presumed innocent in any proceeding before the court, and the board shall have the burden of proving the charges by clear and convincing evidence. All decisions of the court shall be in writing and shall contain findings of fact and conclusions of law. A decision of the court may order removal from office, suspension, censure or other discipline as authorized by this section and as warranted by the record."

It is obvious that the provisions of this section, including those specifying various rights to be afforded the subject of the charges, are intended to apply in cases where formal charges have been filed and where the court is asked "to determine whether a sanction should be imposed." The sanctions imposed under this section are final—not interim. It is not surprising that, in such a context, the drafters of the constitution would require that principles of due process be observed or that the respondent be presumed innocent or that the burden of proof be clear and convincing evidence.

It is also obvious that this process will take time; and, if a sanction is found to be called for, a separate hearing will be required to determine the appropriate sanction, which will take more time, and if an appeal from a final order of sanction is taken to the Supreme Court, this will take even more time.

We believe that it is obvious that it was the recognition that substantial time would necessarily pass between the time a judicial officer was charged and the time when an order of removal or suspension could be effected, that

impelled the drafters to provide for the expeditious entry of "interim orders," and so they did, in Section 18(d)(2) of Article V. It was only by empowering this court to suspend "prior to a hearing," *i.e.,* without a hearing, that the integrity of the judicial system could be safeguarded during this interim period. It is noted that the drafters authorized the entry of interim orders only in cases where the board has already filed formal charges and proceedings under Section 18(b)(5) are underway, and in cases where a judicial officer has been charged in "an indictment or information [with] a *felony*." It was in those cases where the drafters perceived the need to provide this court with the authority for immediate or expeditious suspension in order to avert adverse public perception which may follow if a judicial officer charged with serious offenses continues on the bench or continues on the public payroll.

Courts have debated, and are divided on, the question of whether due process rights are applicable in the judicial disciplinary process. The issue is usually presented as requiring a determination of whether judges have a sufficient property or liberty interest in their offices to invoke the due process clause in disciplinary proceedings, see *e.g., In re Gillard,* 271 N.W. 2d 785 (Minn. 1978); *In re Nowell,* 237 S.E.2d 246 (N.C. 1977); *In re Hanson,* 532 Pa.2d 303 (Alaska 1975); *In re DelRio,* 400 Mich. 665, 256 N.W.2d 727 (1977); *Gruenburg v. Kavanagh,* 413 F. Supp. 1132 (E.D. Mich. 1976), as well as the opinion of this court in *In re Larsen,* 655 A.2d 239, 249 (Pa. Ct. Jud. Disc. 1994) where, in support of an interim order of suspension without pay, we noted

that "federal courts have held that state judges do not have a federal constitutional right[1] to hold office," citing *Fink v. Supreme Court of Pennsylvania,* 654 F. Supp. 437 (M.D. Pa. 1987), *aff'd,* 838 F.2d 1205 (3d Cir. 1988) and *Gruenburg v. Kavanagh, supra.*

Moreover, once it is decided that a due process property or liberty interest is present there is no consensus as to exactly what sort of due process is due. It has been said that due process of law is not a fixed concept but may vary from situation to situation.[2]

We need not enter these debates in deciding this case, because, in proceedings conducted in this court "to determine whether a sanction should be imposed," *i.e.,* in proceedings conducted under Article V, Section 18(b)(5), there is no occasion to guess or to refer to other cases in deciding whether, and, if so, which, due process rights should be extended to judicial officers against whom formal charges have been filed, for these rights are specifically enumerated in that section.[3] Thus, in this case,

---

1. The due process analysis is the same under both the United States Constitution and the Pennsylvania Constitution. See *Electrolux Corp. v. Commonwealth, Dep't. of Labor & Industry, Bureau of Employer Tax Operations,* 705 A.2d 1357, 1362 n.5 (Pa. Commw. 1998) citing *Pennsylvania Game Commission v. Marich,* 542 Pa. 226, 666 A.2d 253 (1995) (analysis of due process under Federal Constitution is applicable under Pennsylvania Constitution).

2. *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), see also, *Oberholzer v. Commission on Judicial Performance,* 84 Cal. Rptr. 2d 466, 479 (Cal. 1999); *In re Judicial Campaign Complaint Against Carr,* 667 N.E.2d 956 (Ohio 1996).

3. These rights include: the right to a prompt hearing "to determine whether a sanction should be imposed" (this obviously does not refer to interim orders because interim orders are not "sanctions"), the right to a public hearing, conducted pursuant to the rules of procedure of

respondent's removal cannot occur, his employment cannot be permanently affected in any way, indeed, no sanction of any kind can be imposed without a full hearing conducted under Article V, Section 18(b)(5) with all its attendant due process protections.

While identification of the principles underlying the drafters' decision to confer these rights on judicial officers may not be important—it is enough that they did confer them—we can assume they include the recognition of a "property" interest in their employment and thus would be in consonance with the holdings of the United States Supreme Court in *Gilbert v. Homar,* 520 U.S. 924, 117 S. Ct. 1807, 138 L.Ed.2d 120 (1997); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and *Perry v. Sindermann,* 408 U.S. 593, 602-603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). For example, in *Gilbert* the Supreme Court said:

"The protections of the due process clause apply to government deprivation of those perquisites of government employment in which the employee has a constitutionally protected 'property' interest . . . . we have previously held that public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and *cannot be fired* without due process, . . . ." *Gilbert v. Homar, supra* at 928-29. (emphasis added)

this court, conducted in accordance with due process and in accordance with the law of evidence, the right to discovery and to subpoena witnesses and documents, the right to the presumption of innocence, and the board has the burden to establish its case by clear and convincing evidence.

In the instant case, of course, we are not asked to "fire" respondent, or to take any final or permanent action against him—an interim, temporary suspension only is sought; and we note, as did the United States Supreme Court in the *Gilbert* case that that court "[has] not had occasion to decide whether the protections of the due process clause extend to discipline of tenured public employees *short of termination.*" [4] *Id.* at 929. (emphasis added) Since the point was not contested by the university in *Gilbert,* the Supreme Court decided not to decide it; but "like the district court assum[e] that the suspension infringed a protected property interest." *Ibid.* The court then addressed the question of whether the respondent had "received all the process he was due" in the proceedings leading to his interim suspension. In addressing that precise question in this case we follow the Supreme Court's analysis and conclusion in that case.

The Supreme Court first cited its decision in *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) where it had held that "a public employee dismissible only for cause was entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing." *Gilbert v. Homar, supra* at 929. In *Loudermill* the court stressed that the pre-termination hearing "should be an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe the charges against the employee are

---

4. The employee in that case was a police officer employed by East Stroudsburg University, Pennsylvania.

true and support the proposed action." *Loudermill, supra* at 545-46.

In the course of its opinion in *Loudermill,* the Supreme Court, in assessing the importance of the governmental interest in the immediate termination of a tenured employee, had observed that "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending *with pay.*" *Id.* at 544-45. (emphasis in original)

The Supreme Court, in its opinion in the *Gilbert* case, took note that the lower court in its opinion[5] had:

"Rel[ied] on this dictum, which it read as 'strongly suggesting that suspension without pay must be preceded by notice and an opportunity to be heard *in all instances,'* 89 F.3d at 1015 (emphasis in original) . . . [and] the court of appeals adopted a categorical prohibition: '[A] governmental employer may not suspend an employee without pay unless that suspension is preceded by some kind of a pre-suspension hearing, providing the employee with notice and an opportunity to be heard.' *Ibid.*" *Gilbert v. Homar, supra* at 930.

The Supreme Court reversed the court of appeals and called its holding on the point "indefensible." *Ibid.* In its opinion the Supreme Court went on to point out that:

"It is by now well established that ' "due process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

---

5. 89 F.3d 1009 (3d Cir. 1997).

'Due process is flexible and calls for such procedural protections as the particular situation demands.' *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). This court has recognized, on many occasions, that where a state must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the due process clause. [citations omitted] Indeed, in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), we specifically noted that 'we have rejected the proposition that [due process] always requires the state to provide a hearing prior to the initial deprivation of property.' 451 U.S. at 540. And in *FDIC v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988), . . . we unanimously approved the Federal Deposit Insurance Corporation's suspension, without prior hearing, of an indicted private bank employee, . . . ." *Gilbert v. Homar, supra* at 930.

The Supreme Court then described the method to be used "to determine what process is constitutionally due" as requiring the balancing of three distinct factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest. *Matthews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). See also, *e.g., Mallen, supra* at 242; *Logan v. Zimmerman Brush Co.,* 455 U.S. 422,

434, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)." *Id.* at 931-32.

Referring to the first factor, the court recognized the severity of depriving someone of the means of his livelihood, but noted:

"On the other side of the balance, the state has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers. Respondent contends that this interest in maintaining public confidence could have been accommodated by suspending him *with* pay until he had a hearing. We think, however, that the government does not have to give an employee charged with a felony a paid leave at taxpayer expense." *Id.* at 932.

Proceeding with this analysis, the court went on to say:

"The last factor in the *Matthews* balancing, and the factor most important to resolution of this case, is the risk of erroneous deprivation and the likely value of any additional procedures . . . . the purpose of any pre-suspension hearing would be to assure that there are reasonable grounds to support the suspension without pay. Cf. *Mallen,* 486 U.S. at 240. But here that has already been assured by the arrest and the filing of charges.

"In *Mallen,* we concluded that an 'ex parte finding of probable cause' such as a grand jury indictment provides adequate assurance that the suspension is not unjustified. *Id.* at 240-41. The same is true when an employee is arrested, and then formally charged with a felony. First, as with an indictment, the arrest and formal charges im-

posed upon respondent 'by an independent body demonstrate that the suspension is not arbitrary.' *Id.* at 244. Second, like an indictment, the imposition of felony charges 'itself is an objective fact that will in most cases raise serious public concern.' *Id.* at 244-45. It is true, as respondent argues, that there is more reason to believe an employee has committed a felony when he is indicted rather than merely arrested and formally charged; but for present purposes arrest and charge give reason enough. They serve to assure that the state employer's decision to suspend the employee is not 'baseless or unwarranted,' *id.* at 240, in that an independent third party has determined that there is probable cause to believe the employee committed a serious crime." *Id.* at 933-34.

In *Gilbert,* the charges against respondent were dismissed shortly after he was initially suspended without pay and the Supreme Court marked the importance of that development with the observation that:

"Once the charges were dropped, the risk of erroneous deprivation increased substantially, and, . . . there was likely value in holding a prompt hearing, . . . ." *Id.* at 935.

It is useful, in evaluating the factors bearing on the determination of what process is constitutionally due here, to stand the facts of the case presently before us alongside the facts of *Gilbert v. Homar* which were before the United States Supreme Court. In doing so, we find the circumstances of this case provide more support for the entry of an interim order of suspension without pay than do those of *Gilbert v. Homar.* There are several reasons for this:

(1) The state's interest in immediately suspending, when felony charges are filed against them, "employees who occupy positions of great public trust and high public visibility" is of heightened significance, said the Supreme Court in *Gilbert v. Homar, supra* at 932, where the respondent was a police officer. The state's interest here, then, is only more vital: for what employees occupy positions of greater public trust or of higher public visibility than judges?

(2) In the case before us the respondent has been indicted by a grand jury: in *Gilbert v. Homar,* the respondent was merely arrested and formally charged. There, the Supreme Court acknowledged that: "there is more reason to believe an employee has committed a felony when he is indicted than merely arrested and formally charged; but for present purposes arrest and charge give reason enough." *Gilbert v. Homar, supra* at 934.

(3) In *Gilbert v. Homar* the charges were dropped—not so, in this case; the criminal prosecution of respondent goes forward.

(4) The post-suspension hearing to which this respondent is entitled under Article V, Section 18(b)(5) of our constitution before any final sanction can be imposed, will provide him with far greater due process protection than that which satisfied the Supreme Court in *Gilbert v. Homar, i.e.,* notice of a meeting with his employer and "an opportunity to tell his side of the story." *Id.* at 927.

(5) The pre-suspension procedures extended to this respondent, include service of the petition for interim order and the amended petition, filing of answers to both, representation by counsel, filing of briefs, and oral argu-

ment in this court. In *Gilbert v. Homar,* the respondent was suspended immediately without receiving even notice that there was an intention to do so.

It is our conclusion that the due process accorded respondent by the Pennsylvania Constitution and provided to him in this case satisfies the requirements of the due process clause of the United States Constitution as well as the constitution of this Commonwealth.[6]

It should be noted that there has developed in our Commonwealth Court what plausibly could be called a discrete cottage industry in reviewing appeals of public employees who claim they were denied due process in the course of termination of their employment. See *e.g., Olson v. Borough of Avalon* (Pa. Commw. Nov. 13, 2002) (No. 1788 C.D. 1997); *Bhattacharjee v. Department of State,* 808 A.2d 280 (Pa. Commw. 2002); *Burger v. Board of School Directors of McGuffey School District,* 805 A.2d 663 (Pa. Commw. 2002); *Veit v. North Wales Borough,* 800 A.2d 391 (Pa. Commw. 2002); *Firman v. Department of State, State Board of Medicine,* 697 A.2d 291 (Pa. Commw. 1997); *Turner v. Pennsylvania Public Utility Commission,* 683 A.2d 942 (Pa. Commw. 1996); *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 140 Pa. Commw. 235, 592 A.2d 779 (1991); *Shah v. State Board of Medicine,* 139 Pa. Commw. 94, 589 A.2d 783 (1991); *Adamovich v. Commonwealth Department of Public Welfare,* 95 Pa. Commw. 22, 504 A.2d 952 (1986). In reviewing these cases, the Commonwealth

---

6. In addition, we note that should future developments establish the deprivation of pay to have been unjustified, this court has the authority to order the restoration of any pay withheld.

Court's primary inquiry is determining whether the employee received a "*Loudermill* hearing"—a reference to the Supreme Court's decision in *Cleveland Bd. of Ed. v. Loudermill, supra,* which as earlier pointed out held that "a public employee dismissible only for cause was entitled to a very limited hearing prior to his termination." We are unable to identify any reason why the job status of this public employee entitles him to more due process protection than police officers or school teachers or any other public employee: there is no reason.

We emphasize, moreover, that the requirements of *Loudermill* apply to pre-*termination* hearings: we are not here engaged in pre-termination proceedings—these are pre-*suspension* proceedings, conducted pursuant to Article V, Section 18(d)(2) "prior to a hearing."

Before proceeding to determine whether in our discretion, considering the totality of the circumstances, we should enter the requested order, we pause to address a portion of our opinion in the case of *In re Michael D. Smith,* 712 A.2d 849, 852 (Pa. Ct. Jud. Disc. 1998). There we denied a petition for an interim order of suspension with pay, and, in doing so, considered the possible consequence of the language of Article V, Section 18(b)(5), regarding the presumption of innocence and the burden of proof required in hearings on formal charges, in proceedings leading to interim orders. In that opinion we said that, since Section 18(b)(5) provided that "the subject of the charges shall be presumed innocent *in any proceeding* before this court, and the board shall have the burden of proving the charges by clear and convincing evidence." (emphasis in original)

"We believe that this constitutional abjuration was intended to clothe respondents in interim proceedings such as this with the presumption of innocence, and, although we do not conclude that, in these proceedings, the board's burden should be to persuade this court by clear and convincing evidence, we do hold that it is the board's burden to persuade the court that the totality of the circumstances requires the entry of an interim order of suspension." *Ibid.*

We now affirm our holding in *Smith* that it is the board's burden to establish that the "totality of the circumstances" requires suspension, but reject the notion that the presumption of innocence extends to respondents in interim proceedings. Respondent has directed our attention to this dictum in *Smith* and calls upon us to accord this respondent with the presumption of innocence in these interim proceedings. Reconsideration of the issue, which is central in this case, impels us to decline to do so.

Making the presumption of innocence a sine qua non in these proceedings would ipso facto require a hearing for, in such case, the board would be compelled to produce some evidence in order to overcome the presumption. This, as we have said, would contravene the fundamental plan of the constitution and nullify Section 18(d)(2) of Article V which specifically authorizes the entry of temporary, "interim" orders "prior to a hearing."

Moreover, a "presumption of innocence," in these interim proceedings, would be incongruous, for, in these interim proceedings we are not to engage in a determination of guilt v. innocence; we engage in a determina-

tion of whether the totality of the circumstances requires that a judicial officer charged with felonies be suspended with or without pay.[7]

Having decided that this court is constitutionally authorized to enter an interim order without a hearing and that, in fact, the Constitution contemplates that we do so where appropriate, and that such a procedure does not withhold or offend any due process rights to which respondent might be entitled, we must decide whether, in our discretion, an interim order suspending respondent without pay should be entered in this case.

In this undertaking, we turn to the rule formulated by this court in *In re Larsen,* 655 A.2d 239 (Pa. Ct. Jud. Disc. 1994) where we stated:

"Rather than a per se rule as proposed by the board, we are of the opinion that a totality of the circumstances

---

7. Respondent cites the Supreme Court of Pennsylvania's opinion in *In the Matter of Cunningham,* 517 Pa. 417, 538 A.2d 473 (1988) as precedent requiring this court to deny this petition. *Cunningham,* however, was decided before the constitutional amendment of 1993 when the constitution contained no equivalent to present Section 18(d)(2) of Article V which contains specific provisions authorizing the entry of an interim order of suspension without pay. Indeed, the Supreme Court pointed out that the constitution as then written provided in subsection (h) of Section 18:

"[T]hat upon a *final order of suspension* or removal 'his salary shall cease from the date of such order.' Article V Section 18(h). There is no such authorization for the stopping of the salary of a jurist in the case of an *interim suspension* where the matter has yet to be finally adjudicated. Moreover, an *interim* suspension is not expressly provided for in Article V, Section 18 as a type of discipline to be imposed as a sanction for misconduct or misbehavior in office." *Id.* at 422 n.1, 538 A.2d at 475-76 n.1. (emphasis added)

As we know, Article V, Section 18(d)(2) now contains specific authority for the entry of interim orders of suspension without pay.

test is more appropriate, with each case being decided on its own facts. Among the factors to be considered are the nature of the crime charged, its relation, or lack thereof to the duties of the responding judicial officer, the impact or possible impact on the administration of justice in this Commonwealth, the harm or possible harm to the public confidence in the judiciary as well as any other circumstances relevant to the conduct in question." *Id.* at 247. See also, *In re Smith, supra* at 851-52.

Consideration of the annunciated factors leads decisively to the conclusion that the totality of the circumstances in this case calls for the entry of an interim order of suspension without pay.

The charges of which respondent stands indicted tell a story of a judge who used his position of trust—concomitantly a position of power and control—to extort money from two lawyers, who at the time were representing numerous plaintiffs in cases assigned to the respondent, for the purpose of compensating him for the injustice he was prepared to do to the litigants in those cases. The indictment further charges that, after his arrest upon the report of the second lawyer-extortee, respondent reapproached the first lawyer-extortee who had allowed the extortion to take place, indeed, had been party to it, but had omitted to report it, and by threatening to expose the lawyer's complicity in that crime extorted further promises of financial payments.

We are unable to imagine a tableau more discordant with the benignity and dignity with which we aspire to dress our judges, more damaging to the mission of judge as seeker and dispenser of justice—without which the

"justice-system" becomes irrelevant, and the term an oxymoron; nor can we conceive of a course of conduct more antithetical to the raison d'etre of the judicial office itself, and more likely to destroy the confidence of the public in it, upon which our judicial system is so dependent.

In short, evaluation of all the factors designated for consideration in *Larsen* leads to the conclusion that the totality of the circumstances calls for entry of an interim order of suspension without pay.

## IV. CONCLUSIONS OF LAW

(1) This court has jurisdiction of the subject matter of the petition for an interim order directing the suspension of a judicial officer without pay pursuant to Article V, Section 18(d)(2) of the Pennsylvania Constitution.

(2) This court has jurisdiction of the person of respondent pursuant to Article V, Section 18 of the Pennsylvania Constitution.

(3) The totality of the circumstances of this case requires that the Judicial Conduct Board's petition be granted.

(4) An interim order will be entered suspending respondent without pay until further order of this court.

## ORDER

And now, January 15, 2003, upon consideration of the petition of the Judicial Conduct Board for an interim order directing the suspension of the above-named judicial officer without pay, the answer of respondent to the peti-

tion, the amended petition and respondent's answer thereto, and upon consideration of the legal memoranda filed by the Judicial Conduct Board and the respondent as well as of the supplemental brief of respondent and the reply brief of the Judicial Conduct Board, and after oral argument, it is hereby ordered that:

(1) The petition of the Judicial Conduct Board for an interim order directing the suspension of a judicial officer without pay is hereby granted.

(2) Pursuant to the authority of Article V, Section 18(d)(2) of the Pennsylvania Constitution, Judge Joseph A. Jaffe is hereby suspended without pay from the date of this order until further order of this court.

(3) The medical benefits of the respondent shall not be suspended during the effectiveness of this interim order.