IN RE: Michael SULLIVAN, Traffic Court Judge of Philadelphia County

No. 2 JD 13

Court of Judicial Discipline of Pennsylvania

Aug. 9, 2013

Robert A. Graci, Chief Counsel, Judicial Conduct Board, James P. Kleman, Jr., Assistant Counsel, Judicial Conduct Board,

Henry E. Hockeimer, Jr., Esquire, Philadelphia, PA, for Respondent.

Before McGINLEY, P.J., CLEMENT, CELLUCCI, MCCUNE, COLVILLE, and MULLEN, JJ.

OPINION BY President Judge McGINLEY.

## I. *INTRODUCTION*

We have before us the Petition of the Judicial Conduct Board (Board) for an Interim Order Suspending Respondent, Michael Sullivan, From His Judicial Office Without Pay, filed January 31, 2013. The Petition is based on an Indictment filed on January 29, 2013 in the United States District Court for the Eastern District of Pennsylvania, charging Respondent with felonies. The Board seeks this order under Article V, § 18(d)(2) of the Pennsylvania Constitution. That section provides:

> Prior to a hearing, the court may issue an interim order directing the suspension, with or without pay, of any justice, judge or justice of the peace against whom formal charges have been filed with the court by the board or against whom has been filed an indictment or information charging a felony. An interim order under this shall not be considered a final order from which an appeal may be taken.[1]

In addressing the question whether we should act to enter an order of interim suspension with or without pay under Section 18(d)(2) in this case we also consider Respondent's Petition in Response to the Board's Petition, filed May 30, 2013, the Board's Answer to Respondent's Petition

---

1. The Board filed an Amended Petition on June 5, 2013 correcting a mistake in its original filing in which it recited that the Indictment charged Respondent with 49 counts of wire fraud and 18 counts of mail fraud whereas the Indictment charged Respondent with 18 counts of wire fraud and 3 counts of mail fraud.

filed June 10, 2013, and the respective Memoranda filed by the Board and the Respondent on the question whether Respondent's suspension should be with or without pay.

## II. *FINDINGS OF FACT*

Findings of Fact are set forth in the Discussion.

## III. *DISCUSSION*

The Indictment charging this Respondent, filed on January 29, 2013 in the United States District Court for the Eastern District of Pennsylvania, also charged five other "Traffic Court Judges" with conspiring to defraud the Commonwealth of Pennsylvania and the City of Philadelphia of fines and costs by engaging in a scheme of "ticket fixing" over a period of years. On February 1, 2013, the Supreme Court of Pennsylvania entered interim orders of suspension without pay against all six traffic court judges named in the Indictment. One of the other five judges named in the Indictment along with this Respondent was Judge Mark Bruno. Bruno filed an Answer in this Court to the Board's Petition for Interim Suspension Without Pay and, on May 24, 2013, this Court entered an order suspending Bruno with pay.[2]

There was a multitude of reasons which contributed to this Court's conclusion that Bruno should be suspended with pay—and not without pay. Some of the reasons were of a legal nature, some factual—all based on the allegations contained in (or missing from) the Indictment. One of the reasons for our decision in *Bruno* was the

failure of the United States to allege in the Indictment one of the elements of the crimes of mail fraud and wire fraud, *viz.* that the fines and costs incident to the various tickets allegedly "fixed" constituted "property in the victim's hands" (*Cleveland v. United States*, 531 U.S. 12, 26, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000)) and were "legally due" (*United States v. Pasquantino*, 544 U.S. 349, 355–56, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005)) even though the fines and costs would not be due unless an adjudication of guilt was entered, which never happened.

Sullivan now comes along and says that, inasmuch as the Indictment is flawed as above as to Sullivan exactly as it is as to Bruno, since Bruno was suspended with pay, Sullivan should be suspended with pay. However, that is not the only reason for this Court's decision in *Bruno*—far from it. When *Bruno* and *Sullivan* are viewed alongside each other what is noticeable is their differences, not their similarities, so our decision that Bruno should be suspended with pay rather than without pay carries no precedential weight or influence in our deciding that question here. The extent and nature of the differences between the cases is easily recognized by reading what the Indictment alleges about the respective participation of Bruno and Sullivan in the illegal scheme described there. The key to understanding the magnitude of the difference is set forth in our opinion in *Bruno*. There we said:

> Closer review of the Indictment reveals much about the nature of the charges against Judge Bruno as well as the level of his participation in the everyday go-

---

**2.** This order is in conflict with the earlier order of the Pennsylvania Supreme Court, filed February 1, 2013, suspending Bruno without pay. It is this Court's position, set forth in an opinion accompanying the order in *Bruno* that since the Judiciary Article of the Pennsylvania Constitution was amended

in 1993 the authority to issue interim orders of suspension resides exclusively with the Court of Judicial Discipline. On July 11, 2013 the Supreme Court entered an order restoring Judge Bruno's pay retroactive to February 1, 2013 and scheduling argument on the jurisdictional question.

ings-on at the Philadelphia Traffic Court which the federal prosecutors and media like to call—not without some justification (at least according to the allegations)—a "culture" of corruption.

Any review of the totality of the circumstances in this case must include the realization that this Respondent was not a regular "traffic court judge"—he was not a judge of the Philadelphia Traffic Court. He was a magisterial district judge elected in Chester County. He went to Traffic Court once a year to help out when the Traffic Court judges left town for one week for their annually required continuing legal education given in Chambersburg or Harrisburg. As a matter of fact the Indictment asserts that the regular Traffic Court judges were chary of Judge Bruno and the other magisterial district judges and found it difficult, challenging, risky to get illegal things done during the week Bruno and the other magisterial district judges were in Traffic Court.

*In re Bruno,* No. 3 JD 13, slip op. at 5–6, 2013 WL 2394663 (Pa.Ct.Jud.Disc. May 24, 2013).

Most noticeable in the Indictment is the scarcity of any references to Bruno. Only two are made. In neither does the Indictment allege any wrongdoing by Bruno. In one (the J.M. ticket, Indictment, para. 18 at p. 24) there is an allegation that Bruno had a conversation with Perri about the ticket. The Indictment contains no further allegation having to do with this ticket. This is perfectly understandable because this ticket was never "fixed." J.M. was found *guilty* in Traffic Court. In the other (the L.R. tickets, Indictment, para. 35–47 at pp. 28–30) there is no allegation that Bruno spoke to anyone or that anyone spoke to Bruno about the L.R. tickets. The only allegation of any connection Bruno had with the L.R. tickets is that he

entered an adjudication of not guilty. There is no allegation that anyone asked Bruno to enter an adjudication of not guilty irrespective of the facts of the case. There is no allegation that Bruno's finding was corrupt—or even incorrect.

It is appropriate here to sum up the scope of Bruno's participation in the illegal scheme described in the Indictment and then to compare it with Sullivan's participation as alleged in that document. Our opinion in *Bruno* contains such a summary and we repeat it:

> ... given the very limited scope of the conversation referred to in paragraph 18, and, given that that conversation was the only contact of any kind that Bruno is alleged to have had with anybody in this Indictment, it would be reasonable to consider that the evidence of that conversation falls decidedly short of establishing this Respondent's participation in the pervasive, expansive, truly impressive conspiracy described in the Indictment. This is especially true when viewed alongside the evidence in the Indictment (discussed earlier) that the illegal activities routinely carried out by the regular traffic court judges and the other named conspirators ceased or was seriously impeded by the mere presence of the magisterial district judges (including this Respondent) during the week the regular traffic court judges were away.

*In re Bruno,* No. 3 JD 13, slip op. at 9, 2013 WL 2394663 (Pa.Ct Jud.Disc. May 24, 2013).

In addition, the Indictment does not allege that Bruno ever placed (or caused to be placed) anything in the mails or participated in any interstate telephone calls or other interstate wire communications in furtherance of the illegal scheme—elements indispensable in establishment of violations of the federal mail fraud and

wire fraud statutes (18 U.S.C. §§ 1341 and 1342 respectively).

On the other hand, Sullivan was a regular "Traffic Court Judge," had served as such since January 2006 and served as Administrative Judge of that court from April to December 2011. Sullivan owned the Fireside Tavern, a bar located at 2701 South Marshall Street, Philadelphia, Pennsylvania (Indictment, para. 15 at p. 6). The Indictment further alleges that Sullivan used his position to "fix" traffic citations on behalf of family, friends, Fireside Tavern customers, a former politician, and a Philadelphia ward leader. In facilitating this preferential treatment, Sullivan directed individuals to leave their traffic citations or related documents at the Fireside Tavern for him, where employees of the Fireside Tavern placed the traffic court documents in a box behind the bar. In or about February 2010, there was one handwritten note in the box that stated: R.H., 267–372–65[xx], Ticket, Friend of [ward leader]. The citation for R.H. involved a prohibited turn. Sullivan both received requests for "consideration" from other judges' personals and made requests for "consideration" to other judges, as communicated through the personals and court staff (Indictment, para. 53–55 at pp. 17–18).

Allegations of specific examples of Sullivan's conduct are spread throughout the Indictment. An example of such an allegation appears in para. 21 at p. 25 of the Indictment which avers:

> On May 12, 2011, defendant Michael J. Sullivan had a telephone conversation with an individual known as "Pop" and "fixing" Pop's son's citation for going through a red light. "Pop" told defendant Sullivan that he "need[ed] [Sullivan] to take care of [it] for me." Sullivan said he'd "look into it." In a subsequent call, Sullivan told "Pop" to

leave the ticket at the bar and Sullivan said he would "tell you what you got to do . . . and I'll handle it."

Similar examples of Sullivan's conduct are found in the Indictment in para. 68–70 at pp. 34–35; para. 71–74 at pp. 35–36; para. 75 at p. 36; para. 77–78 at p. 37; para. 79–83 at pp. 38–39; para. 90–94 at pp. 40–41; para. 107–113 at pp. 44–45; para. 125–126 at p. 47; para. 129–131 at p. 48; and para. 132–136 at pp. 48–49.

The Indictment also contains allegations of a number of cases where Sullivan participated in interstate wire communications in furtherance of the illegal scheme, see, e.g., Indictment para. 71–74 at pp. 35–36 and Count Nos. 9 and 10 at p. 58; para. 77–78 at p. 37 and Count 14 at p. 59—allegations not made as to Bruno.

All of the allegations in the Indictment referenced above amply support the Board's observation made in its Memorandum in Support of its Petition for Suspension Without Pay that:

> . . . when one compares the facts alleged against Judge Bruno in the criminal indictment to the facts alleged against Judge Sullivan, it is clear that Judge Sullivan's participation in the "ticket fixing" scheme was of far greater depth and duration than Judge Bruno's alleged participation.

*Id.* at p. 30.

Also, as the Board aptly notes, Judge Sullivan was Administrative Judge of the Traffic Court for a period of time in 2011 (April to December) and thus "was in a unique position to put a stop to the errant behavior of its judges" (*Id.* at 32); but he did no such thing. As a matter of fact, as many as six of the overt acts charged in the Indictment to have been personally committed by Sullivan were committed in May, June and July of 2011—*while* he was Administrative Judge.

We agree with the Board's viewpoint that:

> ... the facts presented by this case cleave much closer to the factual scenarios presented to [the Court of Judicial Discipline] in *In re Jaffe,* 814 A.2d 308 (Pa.Ct.Jud.Disc.2003), and [*In re*] *Orie Melvin,* [57 A.3d 226 (2012)], in that the behavior of both jurists in those cases reflected both an abject disregard for their responsibility to respect and comply with the law that governed both their conduct as judges and the law that governed their conduct as citizens generally .... well documented in the allegations in the Indictment.

The bottom line here (and this is always the bottom line for us in these cases of interim suspensions) is whether the totality of the circumstances (including consideration of the nature of the crime, the impact or possible impact on the administration of justice and the harm or possible harm to the public confidence in the judiciary) requires interim suspension of the accused judicial officer,[3] and, if so, whether it requires the suspension to be with pay or without pay. In the case of this Respondent the conduct alleged in the Indictment is inherently disdainful of the laws he was elected to enforce, contemptuous of the law in general, took place over and over again, and became a way of life. And the law became a laughing-stock.

In these circumstances only an order of interim suspension which removes this Respondent from the public payroll has any prospect of ameliorating the potential harm to the public's confidence in the judicial system which has been caused by Respondent's alleged conduct which has led to the pending charges against him.

By any measure, the totality of the circumstances requires that this Respondent's interim suspension be without pay.

## ORDER

PER CURIAM

AND NOW, this 9th day of August, 2013, upon consideration of the Judicial Conduct Board's Petition for an Interim Order Suspending Respondent Without Pay, and of Respondent's Petition in Response thereto, and upon the authority conferred on this Court in Article V, Section 18(d)(2) of the Pennsylvania Constitution, the said Petition is GRANTED, and it is hereby ORDERED that the Respondent is suspended without pay until further Order of this Court.

---

**3.** Here, Respondent does not dispute that suspension is appropriate—he contends that it should be with pay (because Bruno's is).